[Civ. No. 11982. First Dist., Div. Two. Mar. 26, 1942.]

GLADYS L. NORRIS, Appellant, v. WILLIAM J. NORRIS, Respondent.

Hanna & Morton for Appellant.

Wood, Crump & Rogers, Francis Petit and Guy Richards Crump for Respondent.

NOURSE, P. J.—In this action for divorce plaintiff and cross-defendant appeals from an interlocutory judgment awarding defendant and cross-complainant a divorce, from an order denying her motion for a new trial and from an order denying her application for costs and attorneys' fees on appeal.

Plaintiff married defendant, a practicing physician and surgeon, on October 25, 1922, and the parties resided in the city of Los Angeles. On February 14, 1924, a daughter, Nancy, was born and on May 1, 1930, a second daughter, Gladys Virginia, was born. The defendant was successful in his practice and the parties prospered financially, but the history of their

marital life reveals that it was fraught with difficulties, friction and unhappiness. The parties resided together until February, 1934, except for five months from October, 1928, to March, 1929. The record shows that plaintiff suffered from various illnesses subsequent to the marriage culminating in a nervous breakdown as a result of which she was confined in a sanitarium from February 27, 1934, to June 18, 1934. While plaintiff was in the sanitarium defendant notified her that he intended to terminate the marriage and negotiations were commenced for the purpose of bringing about a settlement of the property rights of the parties. The property settlement agreement which provided for the division of the community property, for the maintenance and support of the plaintiff and for the custody of the children was executed on January 8, 1935, and affirmed in a supplemental agreement made in July of the same year.

On April 7, 1938, the plaintiff filed the instant action for divorce on the ground of extreme cruelty; she subsequently filed an amendment to her complaint containing a second cause of action on the ground of desertion. Defendant answered and filed a cross-complaint for divorce on the ground of extreme cruelty. After a rather extensive trial at which many witnesses testified for both sides, the court entered numerous findings in favor of defendant and cross-complainant in accordance with the allegations of the cross-complaint. The interlocutory judgment awarded the defendant a divorce from the plaintiff, gave the defendant the care and custody of the minor children, confirmed the property settlement agreement, ordered defendant to pay the sum of $225 per month to plaintiff in accordance with the property settlement agreement and assigned all of the community property not disposed of by the agreement to the defendant as his separate property. The plaintiff appeals from this judgment. The plaintiff moved for a new trial, one ground for the motion being that the death of the shorthand reporter who reported the proceedings during the early part of the trial rendered it impossible to obtain a complete transcript of the testimony and proceedings. The trial court denied the motion and plaintiff also appeals from this order. Finally the plaintiff appeals from the order denying her application for an allowance on account of costs and attorneys' fees on appeal.

Taking these appeals in the order presented, we consider first the appeal from the judgment. It is appellant's con-

tention that the evidence does not sustain the findings of fact upon which the court granted the respondent a divorce. The findings made by the trial court upon the subject upheld the allegations of the cross-complaint in general and of necessity they cannot be set out here verbatim. It was found that the allegations were true to the effect that appellant left the family home in 1923, that she uttered expressions of hatred towards her husband and children, that on numerous occasions in 1928 she again stated her hatred for respondent and her wish that she might leave him, that she refused to assume the responsibilities normally expected of a wife and refused to take care of her children, that she became emotionally upset and hysterical as a result of various incidents occurring in the home, and that her actions were without justification causing respondent great mental anguish and suffering. The testimony presented at the trial of the case was very extensive and in conflict concerning many of the incidents described by the witnesses. It would serve no purpose to review the evidence in support of each and every finding, but a careful study of the record indicates that in spite of the conflict in the testimony the evidence is sufficient to support all of the essential findings of fact made by the trial court. Appellant's complaint that the court failed to find on certain affirmative allegations of her answer in response to the allegations of the cross-complaint on the subject of cruelty is without merit. The findings entered by the court on the subject, when read as a whole, were full and complete and covered all of the essential facts and allegations presented on the matter.

The findings of fact which we have alluded to above support the conclusions of law and the judgment granting respondent a divorce. From our review of the record it would appear that the married life of the parties was one burdened with friction and unhappiness and that the trial court could arrive at no other conclusion than that the marriage should be dissolved. In justice to appellant we must state in passing that the evidence would have been sufficient to sustain a divorce in her favor had the trial court concluded that such was proper. The trial court has a wide range of discretion in determining whether either spouse was guilty of "extreme cruelty" and in view of the evidence which substantially supported the findings and conclusions of law we must hold that the trial court did not abuse its discretion in awarding

the divorce to respondent. *Andrews* v. *Andrews,* 120 Cal. 184, 187, 188 [52 Pac. 298].

Appellant also attacks the judgment upon the ground that the court erred in awarding the custody of the minor children of the parties to the respondent. The trial court entered numerous findings of fact relative to appellant's conduct with the children and concluded that the best interest of the children would be subserved by awarding their custody and control to respondent; in the judgment the court decreed that appellant could visit the children and take them on trips within the state. Appellant's attack on this award of custody is based on her contentions that the witnesses were friends of the respondent, that respondent had prejudiced the children against appellant and that appellant was the proper person to have the care and custody of the children.

Here again although much of the testimony was in conflict there was substantial evidence to support the findings and the judgment. During the time when the parties were living together appellant had much difficulty in managing and controlling the children and because of her many illnesses was unable to devote the proper attention to them. Appellant's attack upon the testimony to this effect is merely an attack against the credibility of the witnesses which question was clearly one within the exclusive province of the judge of the trial court (*Burrows* v. *Burrows,* 18 Cal. App. (2d) 275, 278 [63 Pac. (2d) 1135], 2 Cal. Jur. 916), whose determination is conclusive on the appellate court. *Bellandi* v. *Park Sanitarium Association,* 214 Cal. 472, 480 [6 Pac. (2d) 508].

Under section 138 of the Civil Code the court may, in a divorce action, make such order for the custody of minor children as may seem necessary or proper. That section provides that the court is to be guided by "what appears to be for the best interest of the child in respect to its temporal and its mental and moral welfare;" and, other things being equal, if the child is "of an age to require education and preparation for labor and business, then to the father." Under this statute the trial court is allowed a wide latitude in the exercise of its discretion and the question should be decided wholly on the basis of the best interests of the child; the appellate court will not interfere with the determination except in a clear case of abuse of discretion by the trial court. *Taber* v. *Taber,* 209 Cal. 755 [290 Pac. 36]. At the time of the trial of the instant case the children were of an age at which their

education was of paramount importance to their future development, and the evidence shows that respondent could provide for this education better than could appellant. The trial court had the benefit of having the children and their parents before it; the trial judge could observe the entire situation and in view of the evidence on the issue we find no abuse of discretion in the award of custody to the respondent.

Appellant's final attack upon the judgment is based on the contention that the court erred in finding and concluding that the property settlement agreement was fair and just and in assigning to respondent all of the community property not disposed of by the agreement. The property settlement agreement provided that respondent was to have the custody of the children for two years after which time appellant could apply to the court for an order awarding their custody to her; the respondent agreed to pay $200 per month to appellant for her support for a period of two years and thereafter to pay her the sum of $225 per month until she remarried; respondent agreed to pay an incumbrance on appellant's house and lot; appellant was to receive the sum of $4,000; and, finally, respondent agreed to pay premiums on certain life insurance which would provide appellant with $150 per month subsequent to his death. The court entered numerous findings relative to the agreement to the effect that respondent had not made any misrepresentations to appellant, had taken no advantage of her and had concealed no facts from her in regard to the community property. It then concluded that the agreement was fair, reasonable and just, and in the interlocutory decree of divorce ordered respondent to pay $225 per month to appellant in accordance with the agreement, confirmed the agreement and assigned all of the community property not disposed of by the agreement to respondent as his separate property.

The evidence produced in the lower court shows that at the time of the execution of the property settlement agreement the net worth of the community property held by the parties totaled approximately $35,000, and that at the time of the trial the net worth of respondent's estate amounted to about $98,000, though a portion of this was presumably his separate property. In 1934, the year immediately preceding the execution of the agreement, respondent's net income from his professional practice amounted to over $21,000, and by 1937 this net income had increased to about $33,000. The evidence further shows that on April 24, 1934, respondent bor-

rowed $4,300 from an insurance company on his insurance policies which money was deposited in a bank account in his brother's name. On April 25, 1934, respondent transferred his stocks on deposit with a stock brokerage firm and his credit balance with that company to his brother. It was also established that from June, 1934, until December, 1934, only a portion of the collections received from respondent's professional practice were entered in his cash book and deposited in his regular bank account, the remainder being used to purchase cashier's checks in the sum of $6,618.50 payable to himself and his office nurse. These items were concealed from appellant, and it was under these circumstances that appellant signed the property settlement agreement on January 8, 1935, after having been recently released from a hospital where she had suffered serious illness.

Property settlements of this character are valid, subject "to the general rules which control the actions of persons occupying the confidential relations with each other, as defined by the title on trusts." Section 158 of the Civil Code. Turning to the title on trusts we find section 2228 of the Civil Code which provides: "In all matters connected with his trust, a trustee is bound to act in the highest good faith toward his beneficiary, and may not obtain any advantage therein over the latter by the slightest misrepresentation, concealment, threat, or adverse pressure of any kind." Every violation of the section is declared to be a fraud against the beneficiary of the trust. Section 2234 of the Civil Code. It is established law that confidential relations are presumed to exist between husband and wife; if the husband obtains any advantage over his wife he must stand unimpeached of any abuse of the confidence presumptively reposed in him, and failing in this he bears the burden of showing that the transaction was fair and just and fully understood by the party from whom the advantage was obtained. *Estate of Cover,* 188 Cal. 133, 143 [204 Pac. 583]; *Locke Paddon* v. *Locke Paddon,* 194 Cal. 73, 80 [227 Pac. 715]. The policy of the law in respect to such transactions can be best enunciated by quoting from *Estate of Cover, supra,* at page 144: "In short, a husband, by reason of the marital relation, is bound in his dealings with his wife to the highest and best of good faith, and as a consequence is obligated in such dealings not to obtain and retain any advantage over her resulting from concealment or adverse pressure, and he must, if he would avoid the

presumption of undue influence emanating from the procurement of any advantage over her, make full and fair disclosure to her of all that she should know for her benefit and protection concerning the nature and effect of the transaction, or else he must deal with her at arm's length and as he would with a stranger, all the while giving her the opportunity of independent advice as to her rights in the premises.'' See also *McKay* v. *McKay,* 184 Cal. 742, 747 [195 Pac. 385], where it was held that this presumption of undue influence in transactions between husband and wife prevails over other presumptions. Though we should reject the finding that the agreement had not been procured through undue influence and concealment by the respondent as not supported by the evidence, this would not dispose of the issue. It is the settled rule that one will not be relieved from a fraudulent contract unless he has been injured by it. Here the evidence does not show that any material injury resulted to the appellant. With the decree of divorce awarded to respondent on the ground of the appellant's cruelty she would not be entitled to alimony. The most that she could expect, if the settlement agreement should be set aside, would be an equitable division of the community property as provided in section 146 of the Civil Code. What that division might have been if the settlement agreement had been rejected it is not possible to say. But it is true that the property received by the appellant and the awards made by the decree are all substantial payments, and it is altogether possible that in the final analysis they will exceed whatever might have been awarded appellant under the code section.

We conclude, therefore, that though we cannot concur in the trial court's finding that this agreement was wholly free from undue advantage and concealment on the part of the respondent, we are not convinced that under all the circumstances the approval of the agreement was prejudicial to the appellant or that there is any reasonable ground to assume that a reversal of the judgment upon that issue would be beneficial to her.

 The appeal from the order denying appellant's motion for a new trial on account of the inability to obtain a reporter's transcript because of the death of the reporter who reported a portion of the proceedings is without merit. Appellant admits that the notes of counsel ''were substantially complete as to the testimony adduced'' and the bill of exceptions pre-

pared in three volumes would seem to contain all the necessary testimony of the witnesses in the trial court. Section 953e of the Code of Civil Procedure provides: "When it shall be impossible to have the phonographic report of the trial transcribed by a stenographic reporter as provided by section 953a of this code because of the death or other disability of a reporter who participated as a stenographic reporter at the trial, the court or a judge thereof shall have power to set aside and vacate the judgment, order or decree from which an appeal has been or is to be taken and to order a new trial of the action or proceeding." Under this code section the trial court is vested with a wide discretion to refuse or grant the motion for a new trial. *Moore* v. *Specialty Oil Tool Co.*, 128 Cal. App. 662, 664 to 666 [18 Pac. (2d) 82]. In view of the complete record presented to this court we cannot see that appellant has been prejudiced and the order denying the motion was, under such circumstances, within the discretion of the trial court.

The final appeal is from the order denying appellant's application for an allowance for costs and attorneys' fees on appeal. From appellant's affidavit and the evidence in the record it appears to be uncontroverted that appellant did not have the funds necessary to prosecute the appeal or to pay attorneys' fees, that respondent is able to pay a reasonable sum therefor, and that the appeal was taken in good faith and presented debatable questions which were not without substantial merit or controversy. Under these circumstances it must be held that the court erred in denying appellant's application for a reasonable allowance for costs and counsel fees on appeal. *Coleman* v. *Coleman*, 23 Cal. App. 423, 426 [138 Pac. 362].

The judgment is affirmed. The appeal from the order denying a new trial is dismissed. The order denying costs and attorneys' fees is reversed and remanded for further proceedings in accordance herewith.

Sturtevant, J., and Spence, J., concurred.

A petition for a rehearing was denied April 25, 1942, and appellant's petition for a hearing by the Supreme Court was denied May 21, 1942.