[Civ. Nos. 18374, 18465. Second Dist., Div. Three. Feb. 18, 1952.]

JAMES A. GANANN, JR., Respondent, v. JANE E. GANANN, Appellant.

Monta W. Shirley for Appellant.

Shatford & Shatford for Respondent.

VICKERS, J. pro tem.—Appeals by defendant and cross-complainant from a judgment of divorce and from an order denying her application for attorney's fees and costs on appeal.

The parties involved in this divorce case carried on a meretricious relationship for 10 months in 1948 while the respondent was awaiting a final decree of divorce from his first wife. That decree having been entered they were married on January 16, 1949. Marital strife quickly developed and they separated on April 25, 1949. Respondent filed suit for annulment or divorce on May 23, 1949. Thereafter appellant filed an answer and cross-complaint. The cause was on trial for three days in March, 1950, following which the court awarded a divorce and the property involved to respondent. It gave no relief to appellant except that it directed respondent to pay to appellant and her attorney $50 court costs and $300 attorney's fees. Following the entry of judgment the appellant sought an order compelling respondent to pay her attorney's fees and costs on appeal. After a hearing on the order to show cause the trial court denied her any relief.

Appellant attacks the judgment on the ground that the findings and judgment are not supported by the evidence. Each of the findings is supported by substantial evidence. The judgment is supported by the findings. Under the long established rules of law we cannot substitute our judgment for that of the trial court. Appellant also urges that the court made erroneous rulings in the sustaining of respondent's objections to some of appellant's questions. We find no merit in any of appellant's contentions.

█ The record contains ample evidence to support the court's finding that during the marriage the appellant had treated respondent with extreme cruelty and had wrongfully inflicted upon him grievous mental suffering. Such evidence consisted in part of respondent's testimony, which was sufficiently corroborated, that commencing a few weeks after the marriage appellant on several occasions insisted that he transfer his separate property to her name and threatened to leave him at once unless he did so; that she was frequently mentally disturbed; that she accused him of having lost his manhood and of being impotent; that she repeated such accusations to members of his family; that shortly before the separation she said: "Let us get rid of this farce of a marriage and get a divorce"; and that respondent suffered greatly by reason thereof. The court was fully justified in drawing the infer-

ence that if the appellant loved the respondent at the time of the marriage she lost that love shortly afterwards and that that fact became evident to respondent. In her briefs the appellant insisted that the court should not have believed the respondent. However, that was within the sole discretion of the trial court. We cannot say from the record that the court was not justified in believing the respondent's testimony to be true.

Appellant also contends that the court should have awarded her at least some of the property involved and that the failure of the court to do so was so unfair and unjust as to result in a miscarriage of justice. At the time of the marriage the appellant had no property assets, except a small amount of furniture, while the respondent had substantial equities in the residence in which the parties thereafter lived and in the furniture with which it was equipped and in an automobile. The respondent was required to make substantial monthly payments to protect these equities. During the marriage the respondent received approximately $400 per month and the appellant received approximately $230 per month as their respective salaries from separate employments. During the marriage the respondent received $2,500 in cash from a property settlement theretofore made with his former wife and borrowed approximately $450 on his life insurance policy. During the same period of time he made various payments upon the residence property, the furniture and on his automobile. The court found that all of such payments, made prior to May 1, 1950, were made out of his separate property. It also found "It is true that there is no other community interest other than the $2,496.54 spent by plaintiff on his separate property." It also found as a conclusion of law "That any and all community interests, if any, by reason of payments on obligations on plaintiff's separate property made after marriage is awarded to plaintiff." The apparent uncertainty of the court in regard to the existence of community property, appears to have been due to the following evidence: That the appellant's mother and her two children by her previous marriage lived with the parties; that the salaries of the parties were used for the payment of the living expenses of the entire family, without any record being kept of the amounts so spent; that according to an itemized statement of account the respondent spent approximately $2,300 more than he received from his earnings from the date of marriage to the time of trial.

Under the facts presented we cannot say that the court was not justified in awarding to the respondent whatever community interest in the property in question existed. ██ The respondent, being the nonoffending party, was entitled to something in excess of one half of such community interest (see Civ. Code, § 146, subsection one; *Harrold* v. *Harrold,* 100 Cal.App.2d 601, 608 [224 P.2d 66] ), and what, if any, such property was to be awarded to the appellant, the offending party, rested in the sound discretion of the court. In support of her contention that a portion of the property should have been awarded to her the appellant urges that the evidence establishes that prior to the marriage the respondent promised to convey title in the residence property to the parties as joint tenants. However, there was a direct conflict in the evidence on this subject and again the court chose to believe the respondent rather than the appellant. There is therefore no merit to this contention.

We have examined the portions of the reporter's transcript cited by the appellant in support of her contention that the court erred in certain rulings upon the admissibility of evidence. Appellant's principal complaint in this regard is that the court unduly restricted the cross-examination of the respondent. From our examination of the portions cited, as well as other portions of the reporter's transcript, it does not appear that the court was unduly restrictive of counsel for the appellant while cross-examining or that it was more liberal with counsel for the respondent in that regard. Furthermore, there is no showing in the record as to what, if any, material facts would have been developed on behalf of appellant if her counsel had been permitted greater latitude on cross-examination.

From the matters presented in the briefs and from the record as examined by us we cannot say that the manner in which the trial was conducted was unfair or unjust to the appellant or that a miscarriage of justice resulted therefrom. ██ In arriving at its decision denying attorney's fees and costs on appeal, it was necessary for the trial court to consider the needs of the wife, the ability to pay of the husband and the good faith of the wife. ██ It was proper for the court to take into account not only the evidence produced at the hearing on the order to show cause, including the affidavits, but also the history of the entire litigation, and the circumstances that brought the unfavorable result to the wife, including the evidence introduced at the trial

(see *Wittman* v. *Superior Court*, 19 Cal.App.2d 734, 736 [66 P.2d 180]). The appellant sought an order for $1,500 attorney's fees and $800 costs. The affidavits of the parties do not appear in the clerk's transcript. They were specified in appellant's notice to the clerk of the trial court for inclusion in the clerk's transcript and are before us by virtue of an order augmenting the record on appeal. According to her supporting affidavit the appellant's monthly income was $230 and her monthly expenses $231. By her testimony she declared that these expenses included the support of herself, her two children and her mother, as well as the food supplied her brother. She also testified she was living with her brother rent free. In her affidavit she also set forth the value of her husband's separate property as $26,000. According to respondent's affidavit the value of his interest in his separate property was only $7,000 or $8,000 and consisted solely of equities. This was supported by uncontradicted evidence received during the trial. His affidavit further set forth his monthly income as approximately $385 and his monthly expenses as "$393 plus payments due on taxes, fire insurance and Department of Internal Revenue." He itemized $203 of his expenses as payments required to be made on his separate property. At the time of the purchase of the residence property, just prior to the marriage, the appellant paid $8,000 in cash thereon and agreed to pay an additional $12,000. How much had been paid thereafter on account of the principal of this debt was not disclosed. There was no testimony as to what sum or sums would be realized upon a sale of his separate real or personal property. The court was entitled to assume that he was required to pay the monthly installments or suffer the penalty of the loss of the property. It is therefore clear that the trial court had a difficult problem in weighing the needs of the wife against the ability of the husband to pay all or a substantial portion of the $2,300 demanded.

In determining the question of appellant's good faith in seeking the allowances in question and in prosecuting the appeal the court had nothing of an evidentiary nature to consider except the record. The appellant was not questioned on this subject nor did she refer to it in her affidavit. Her counsel neither testified nor filed any affidavit in regard thereto. During the course of his argument he did assert, in strong terms, that he would be successful in securing a reversal of the judgment. In view of the absence of any expression by her the court was justified in concluding that

the existence of appellant's good faith depended to a great extent upon whether there was a reasonable basis for this assertion by counsel. Apparently the court did not think so. "Where the trial court is satisfied, from the record before it, that the proposed appeal is not undertaken in good faith, or with reasonable belief that it has merit [citing a case], the application should be denied." (*Stewart* v. *Stewart,* 156 Cal. 651, 656 [105 P. 955].) The court was also entitled to consider that each finding and each portion of the judgment to be attacked by the appeal was supported by substantial evidence and that there were no questions of law involved upon which the appellant could have a reasonable hope of prevailing.

It is a firmly settled principle of law that the granting of attorney's fees and costs on appeal rests in the sound discretion of the trial court and will not be disturbed by the reviewing court unless abuse of that discretion is shown (see *Kellett* v. *Kellett,* 2 Cal.2d 45, 48 [39 P.2d 203]). In reaffirming this principle the Supreme Court, in *Weil* v. *Weil,* 37 Cal. 2d 770 at page 791 [236 P.2d 159], said: "In rare instances, however, an order denying fees will be reversed where it is shown that the appeal presents 'debatable questions which were not without substantial merit or controversy.' (*Norris* v. *Norris,* 50 Cal.App.2d 726, 735 [123 P.2d 847])" It will appear from what we have said that this is not such a case. In both the Weil and Norris cases the ability of husband to pay was an accepted fact.

In view of all the facts and circumstances before the trial court we cannot say that the trial court abused its discretion in denying to appellant the allowance of attorney's fees and costs.

The judgment and order are affirmed.

Shinn, P. J., and Wood (Parker), J., concurred.

A petition for a rehearing was denied March 11, 1952, and appellant's petition for a hearing by the Supreme Court was denied April 17, 1952.