[Civ. No. 37.   Fifth Dist.   Apr. 2, 1962.]

AUDRY M. HUNTER, Plaintiff and Appellant, v. BILL ALFRED HUNTER et al., Defendants and Respondents.

86

Vizzard, Baker, Sullivan & McFarland and Allan H. McFarland for Plaintiff and Appellant.

Mack, Bianco, King & Eyherabide and H. C. Mack, Jr., for Defendants and Respondents.

CONLEY, P. J.—Audry M. Hunter appeals from a decree of divorce and from an order made after judgment denying her application for an award of attorney's fees.

The notice of appeal from the judgment does not by its terms limit the scope of the appeal, but appellant's briefs discuss only a single feature of the decree, namely, the award

of certain specific property to the defendant as his separate property.

It is a rule of common sense as well as of convenience that questions not argued by an appellant may be considered withdrawn or abandoned. The court below awarded the divorce to Mrs. Hunter and the custody of the child, gave her alimony for a limited time and made a continuing award for the purpose of supporting the minor. We can see no reason why she should wish to overturn any of these favorable parts of the judgment or the provisions with respect to the division of other property agreed to by both parties and accordingly will consider that the sole ground of appeal with respect to the judgment itself is her contention that the trial court erred in determining that the property in question belonged solely to the defendant.

The items in dispute are all clearly traceable to a fund of $5,552.74 which admittedly was the separate property of Bill Alfred Hunter but which was placed in a Bakersfield Savings and Loan Association account in July of 1957 in the names of Bill A. and Audry M. Hunter ''H & W as Joint Tenants—With Right of Survivorship''; thereafter the funds were transferred to various accounts and transmuted to properties which, in part at least, stood in the name of the mother and father of the defendant at the time of the trial. For this latter reason, the parents of Bill Alfred Hunter were finally joined as parties defendant in the case.

Defendant's mother, Pauline C. Hunter, testified that shortly after the marriage she and the plaintiff went to the financial institution where she had an account as trustee for her son. She said to the clerk, ''This is Bill's new wife, Audry . . . I would like to have the account changed so that she would be able to get the money out for Bill.'' She further testified, ''It was in my name as trustee for him where no one could get it out but me and I told Audry that . . . I would have it changed into her name and Bill's name so that she would be able to draw out for him, to make withdrawals.'' Mrs. Hunter testified that her son was working at that time from 7:30 in the morning until late at night and that it would have been impossible for him personally to make withdrawals. The clerk of the Bakersfield Savings and Loan Association accordingly set up a new joint account in the form mentioned above. The mother further testified, ''After it was changed and they had given her a card to bring home and have Bill to sign, I told Audry, 'You realize that this is all of our savings over twenty-

two years, and this is not to be fooled away,' and we had saved this for a college education and when Bill didn't decide to go, we kept on hanging on and it was to be used [to buy] for him a home and she said, 'Yes, I know that.' "

During the period August 1957 to January 25, 1959, deposits and withdrawals were made. On January 26, 1959, the account was closed, and the sum of $5,857.95 withdrawn. On February 9, 1959, this identical amount was deposited by plaintiff in the Bank of America at Bishop, where the parties had moved. Thereafter, part of this money was deposited in the High Sierra Credit Union in Bishop. The accounts at the bank and in the credit union in Bishop were both carried in the names of "Bill A. Hunter or Audry M. Hunter."

In February of 1959, a lot was purchased for $2,500 and the deed specified as grantees "Bill A. Hunter and Audry M. Hunter, husband and wife, as joint tenants." During the negotiations for the purchase of the lot an attorney in Bishop represented both plaintiff and defendant, but the defendant testified that he never saw the attorney and that he did not instruct him as to how the deed should be made. The check in payment of the lot was written by plaintiff. On June 7, 1960, this land was sold to defendant's parents, who mailed a check for $3,000 payable to defendant only. The check was never cashed and the defendant returned it to his parents. His father later tore it up.

A week after the transfer of the lot defendant also withdrew the sum of $3,000 from the High Sierra Credit Union account and mailed a check for that amount to his parents in Bakersfield. This left $155.26 in the account with the credit union. The $3,000 was reduced by some $800 expended by the parents at the request of the defendant, and the balance of $2,200 is deposited in their name with the California State Employees Association Credit Union in Bakersfield, where it has earned interest from June of 1960.

Plaintiff admitted that she had at various times referred to the money in the several accounts as "Bill's money." The defendant testified that the original account stood in the name of "Pauline C. Hunter, trustee for Bill A. Hunter," and that when he decided to change the form of the account he told his wife that ". . . I was going to have her name put on there because I couldn't make it to there during business hours and in case I made a withdrawal she could make it for me." When the defendant was asked whether he said to his

wife that he was giving her half of the money or any of the money, he replied emphatically, "No," and similarly when he was asked, "Did you intend to give her any of the money?" he said "No, sir." Three withdrawals were made from this original account, and defendant testified that he told his wife to make each of them or discussed the withdrawals with her previous to their being made. The three were: $100 for a washing machine; $300 for moving expenses when the family transferred its home to Bishop; and the sum of $5,857.95 when the account was closed. The defendant further testified that he did not know the meaning or legal significance of joint tenancy prior to the time the divorce action was filed.

The father of the defendant testified that his daughter-in-law always referred to the money as "Billy's money."

To summarize, then, it is uncontradicted that the money in the Bakersfield Savings and Loan account was originally the separate property of defendant; that after the parties were married the transfer was made by a clerk of the Bakersfield Savings and Loan Association to the joint account and that the mother who previously held the money in her name as trustee made it clear to the plaintiff that the form of the account was employed solely for the convenience of defendant in withdrawing the money during the working day. This was further borne out by the conversation between the plaintiff and defendant; the defendant did not at any time tell plaintiff that he was giving her any of the money or that he intended that any part of it should be her own; he made it clear to her that the arrangement was merely for convenience to permit him to withdraw such sums as might be needed by him from time to time. The plaintiff never withdrew any part of this fund without specific authorization from the defendant, and on several occasions the plaintiff admitted that it was "Bill's money" or "Billy's money."

In form, the Bakersfield Savings and Loan account and the deed by which the parties received title to the Bishop real property made the parties joint tenants. In the accounts in the Bank of America and the High Sierra Credit Union in Bishop the names of husband and wife were apparently set forth as tenants in common.

Can a trial court properly find that property apparently held in joint tenancy or tenancy in common is in fact the separate property of one of the spouses?

In *Socol* v. *King*, 36 Cal.2d 342, 345, 346 [223 P.2d 627], the Supreme Court gives an affirmative answer:

". . . it is well settled in this state that the form of the instrument under which a husband and wife hold title is not conclusive as to the status of the property and that property acquired under a joint tenancy deed may be shown to be actually community property or the separate property of one spouse according to the intention, understanding or agreement of the parties. [Citing cases.]

". . . When there is an oral or written agreement as to the ownership of the property [citing cases], or where such an understanding may be inferred from the conduct and declarations of the spouses [citing cases], it is true that the terms of the deed are not controlling."

In *Martinelli* v. *California Pacific Title Ins. Co.*, 193 Cal. App.2d 604, 607 [14 Cal.Rptr. 542], it is said: "Such intention or understanding may be shown by circumstances as well as by declaration." (See also on the general subject: *Turknette* v. *Turknette*, 100 Cal.App.2d 271, 279 [223 P.2d 495]; *Huber* v. *Huber*, 27 Cal.2d 784 [167 P.2d 708]; *Edwards* v. *Deitrich*, 118 Cal.App.2d 254, 259, 260 [257 P.2d 750]; *Tomaier* v. *Tomaier*, 23 Cal.2d 754 [146 P.2d 905]; *Trimble* v. *Trimble*, 219 Cal. 340 [26 P.2d 477]; *Hibernia Sav. & Loan Society* v. *DeRyana*, 210 Cal. 532 [292 P. 632]; *Salveter* v. *Salveter*, 206 Cal. 657 [275 P. 801]; *Estate of Kelpsch*, 203 Cal. 613 [265 P. 214]; *Hammond* v. *McCollough*, 159 Cal. 639 [115 P. 216]; *Fanning* v. *Green*, 156 Cal. 279 [104 P. 308]; *Title Ins. & Trust Co.* v. *Ingersoll*, 153 Cal. 1 [94 P. 94]; *Perdicalis* v. *Perdicalis*, 92 Cal.App.2d 274 [206 P.2d 650]; *Bassi* v. *Bassi*, 89 Cal.App.2d 886 [202 P.2d 96]; *Luminoso* v. *Luminoso*, 75 Cal.App.2d 472 [171 P.2d 516]; *Estate of Wilson*, 64 Cal.App.2d 123 [148 P.2d 390]; *Horsman* v. *Maden*, 48 Cal.App.2d 635 [120 P.2d 92]; *Cox* v. *Cox*, 82 Cal. App.2d 867 [187 P.2d 23].)

A finding that property is separate or community in character, even though the title apparently stands in joint tenancy is binding and conclusive upon an appellate court if it is supported by substantial evidence. This principle applies to the presumption of joint tenancy created by the form of deed or account and to the presumption of community property created by Civil Code section 164. (*Benom* v. *Benom*, 173 Cal.App.2d 286, 297 [343 P.2d 638].) In the case of *Thomasset* v. *Thomasset*, 122 Cal.App.2d 116, 123 [264 P.2d 626], it is said:

"There are expressions in the decisions to the effect that the separate character of property acquired after marriage

is to be established by 'clear and convincing evidence,' 'clear and decisive proof,' 'clear and satisfactory proof.' [Citing cases.] These expressions state a rule of evidence directed to the trial court; and if that court finds that the evidence meets the rule, a reviewing court must accept that determination as conclusive if there is substantial evidence to support it. [Citations.] . . . Whether the evidence adduced to overcome the presumption of community property is sufficient for the purpose is a question of fact for the trial court. [Citing cases.]''

The Supreme Court says in *Gudelj* v. *Gudelj*, 41 Cal.2d 202, 212-213 [259 P.2d 656] : '' 'Whether the evidence against the presumption is sufficient to overthrow it, is a question of fact.' (*DeBoer* v. *DeBoer*, 111 Cal.App.2d 500, 504 [244 P.2d 953].) However, the presumption arising from the form of the deed may not be rebutted solely by evidence as to the source of the funds used to purchase the property. (*Siberell* v. *Siberell*, 214 Cal. 767, 773 [7 P.2d 1003] ; *In re Rauer's Collection Co.*, 87 Cal.App.2d 248, 257 [196 P.2d 803] ; and see *Cash* v. *Cash*, 110 Cal.App.2d 534, 538 [243 P.2d 115].) Nor can the presumption be overcome by testimony of a hidden intention not disclosed to the other grantee at the time of the execution of the conveyance. (*Socol* v. *King, supra,* 36 Cal.2d 342, 346 ; *Watson* v. *Peyton,* 10 Cal.2d 156, 158 [73 P.2d 906] ; *Shaver* v. *Canfield,* 21 Cal.App.2d 734, 741 [70 P.2d 507].)

''This principle is not contrary to the general rule that 'parol evidence is admissible to establish the absence of an intention to make a gift of either separate or community property, although the instrument of conveyance is made by the husband to the wife alone or as joint tenant with him or is from a third person to the wife or to both as joint tenants at the husband's direction.' (*Huber* v. *Huber,* 27 Cal.2d 784, 788 [167 P.2d 708].) Such evidence always is admissible when it tends to prove a mutual understanding or agreement that the other spouse was not to receive a present gift under a conveyance of property to both spouses as joint tenants. (*Huber* v. *Huber, supra,* 27 Cal.2d 784, 789.)''

In *Williams* v. *Williams,* 178 Cal.App.2d 522 [3 Cal.Rptr. 59], the defendant testified that he had purchased certain stock in the joint names of himself and his wife because his bank had insisted that it be done in that manner and also because of the dictates of his faith, and that he never intended to give his wife any interest in the stock; this was held to be sufficient to sustain the trial court's conclusion

that the shares remained separate property of the defendant. In *Huber* v. *Huber, supra,* 27 Cal.2d 784, real property was purchased with separate funds of the defendant husband and placed in joint tenancy. The court's finding that the property nevertheless remained the separate property of the defendant was sufficiently supported by the defendant's testimony that he told his wife that he " '. . . fixed it so you will get half if we are married at the time of my death,' " that he did not intend to give her any present interest in the property and that he did not understand the legal effect of joint tenancy, coupled with the testimony of witnesses that the wife never made claim to any interest in the property.

We hold that the evidence is sufficient to support the finding of the trial court that the property is the separate property of the husband.

The granting or denial of counsel fees on appeal in divorce litigation is within the sound discretion of the trial court and an order made either way will not be reversed in the absence of an abuse of discretion. (*Wittman* v. *Superior Court,* 19 Cal.App.2d 734 [66 P.2d 180]; *Ganann* v. *Ganann,* 109 Cal.App.2d 346 [240 P.2d 722]; *Barker* v. *Barker,* 139 Cal.App.2d 206 [293 P.2d 85].)

The law's purpose in allowing attorney's fees and costs to a wife who has not sufficient monies to meet such expenses is to assure to women with domestic difficulties that they will have their day in court, on appeal as well as at the trial. Four conditions must concur to warrant an allowance of attorney's fees in such a case as this: (1) The wife must be in need of such assistance—if she has ample funds of her own to retain counsel no requirement that her husband pay counsel fees is justified; (2) The husband must have the ability to pay; (3) The proposed appeal must be taken in good faith; (4) There must be a reasonable ground for the appeal; this does not mean that the appellant must be assured of success, but that reasonable men should believe that the contentions to be urged merit attention and resolution by an appellate court.

The clerk's transcript shows that the court found "That the plaintiff and cross-defendant does not have sufficient income or assets to pay the costs of her attorney fees in this action, and that said plaintiff is without funds to maintain herself and her said minor child and is entitled to child support and alimony in this action." And plaintiff's uncontradicted affidavit in support of her motion stated that

". . . affiant has no funds whatsoever with which to prosecute this appeal. . . ." The decree and the record here show that the defendant husband has the ability to pay a reasonable attorney's fee on behalf of the plaintiff.

The third requisite—good faith—is not questioned by respondent, and it is sufficiently established by the record. The fourth requirement—that there be a reasonable ground to take an appeal—is indicated by the discussion in this opinion of the contention made by plaintiff. While the trial judge made conflicting statements as to his opinion of the chances of reversal of the judgment, the record shows that he did state at one point to counsel for the appellant, "You have a good chance in this appeal." And the fact that he specifically reserved the right to make an allowance of fees at the time of the final decree indicates also that he thought there might be a good ground for some award.

To tell a woman who wishes in good faith to appeal a judgment in a divorce action and who is without funds to pay necessary counsel fees that no such fees will be allowed except possibly on an application for a final decree is practically equivalent to denying her the right to appeal unless her attorney is willing to act without compensation or for the mere possibility that some attorney's fee may be awarded later. In *Norris* v. *Norris*, 50 Cal.App.2d 726, 735 [123 P.2d 847], where a similar question was being considered, the court dealt with the facts as follows:

"From appellant's affidavit and the evidence in the record it appears to be uncontroverted that appellant did not have the funds necessary to prosecute the appeal or to pay attorneys' fees, that respondent is able to pay a reasonable sum therefor, and that the appeal was taken in good faith and presented debatable questions which were not without substantial merit or controversy. Under these circumstances it must be held that the court erred in denying appellant's application for a reasonable allowance for costs and counsel fees on appeal." (See also *Coleman* v. *Coleman*, 23 Cal.App. 423, 426 [138 P. 362]; *Weil* v. *Weil*, 37 Cal.2d 770, 791 [236 P.2d 159].)

It seems to us that the trial court abused its discretion in refusing fees to the plaintiff's attorney.

The judgment is affirmed; the order denying attorney's fees to plaintiff is reversed and the cause remanded for further proceedings in accordance herewith.

Brown, J., and Stone, J., concurred.