[Civ. No. 25381. Fourth Dist., Div. Two. Jan. 28, 1982.]

In re the Marriage of KATHRYN L. and DOUGLAS C. JACOBS.
KATHRYN L. JACOBS, Appellant, v.
DOUGLAS C. JACOBS, Appellant.

274

276

COUNSEL

Farrell & Miller and Linda Lancet Miller for Appellant Wife.

Wenke, Taylor, Evans & Ikola and Richard A. Derevan for Appellant Husband.

OPINION

TAMURA, J.*—The superior court granted wife's motion to set aside a stipulated interlocutory judgment and final judgment of dissolution. Husband appeals from the order contending that wife's motion was untimely and that she failed to prove sufficient grounds to set the judgment aside. Wife appeals from the portion of the order denying recovery of attorney fees.

### FACTS

The parties were married for over 13 years. There are two children of the marriage, ages twelve and eight. The younger of the two boys is deaf as a result of a bout of meningitis. The husband is an accountant and a partner in a well-known accounting firm.

During their marriage, the parties lived for a time in Ohio. When they moved to California in June of 1978, they sold their Ohio resi-

---

*Retired Associate Justice of the Court of Appeal sitting under assignment by the Chairperson of the Judicial Council.

dence for approximately $340,000, realizing $250,000 cash. In June or July of 1978, the parties used $130,000 of the proceeds from the sale of the Ohio house as a down payment on a new house in Santa Ana. The balance of the funds was used to purchase time certificates of deposit in the names of the two children.

In November of 1978, husband drew up and signed a handwritten note, back dated to July 1, 1978, promising to pay $130,000 to the children. At husband's request, wife also signed the note. At that time (Nov. 1978) husband also prepared what purported to be federal gift tax returns and asked wife to sign one of the returns as donor. Each return purported to be for a gift of $125,000. The return signed by husband listed husband and wife as donees of the gift. The return signed by wife did not list any donees. Another handwritten note, dated April 23, 1979, promised to pay $16,000 to the children; the note was signed by the husband, but not by the wife.

In the face of an impending divorce and because husband refused to give up their home, wife sought another residence. When wife found a condominium she wanted to purchase, husband insisted that wife execute a note to the children for the $60,000 from the proceeds of the sale of the Ohio house she used for the down payment.

The record shows that husband used his financial expertise as an accountant to manipulate the parties' money. It was his custom to place the parties' extra money or savings in accounts in the children's names to avoid taxes. However, the parties always treated the money as their own. Before November of 1978, the parties had never executed any notes or gift tax returns relative to their use of the "children's money." At that time, however, husband told wife it was necessary to execute the $130,000 note and the gift tax returns in order to avoid $12,000 in taxes. He told wife that, as always, the parties would have full use of the funds, even though the money was in the children's names.

In August of 1979, wife filed for dissolution of marriage. An order to show cause for temporary support was scheduled for November 5, 1979. As a result of negotiations conducted in the hallway outside the courtroom, the parties entered into an oral stipulation in open court resolving all the issues in the dissolution. The trial court entered a minute order on November 5, 1979, granting an interlocutory judgment of dissolution

based on the oral stipulation but the terms of the stipulation were not set out in the minute order.

On January 23, 1980, an interlocutory judgment was filed in accordance with the terms of the oral stipulation. The judgment ordered, inter alia: "12. The parties shall serve as joint trustees for the property of the minor children consisting of approximately $250,000 in notes and/or cash, with Respondent having the sole right to manage and control the investment of funds but with the parties having equal control over the disbursement of funds for the benefit of the children." The final judgment of dissolution was entered on April 17, 1980.

On July 22, 1980, wife filed a motion to set aside the interlocutory and final judgments, except as to the status of the marriage. The motion was based on Code of Civil Procedure section 473 and upon the equitable powers of the court and was supported by an extensive factual declaration. Husband's response to the motion did not include any factual counterdeclarations. The court granted wife's motion and set aside the judgments and the stipulation but denied her motion for attorney fees.

Husband contends that wife's motion to set aside the interlocutory judgment was untimely and, in any event, that she did not prove sufficient grounds to justify the court in vacating the judgments. He further contends that the court erred in denying his request to present oral testimony at the hearing on the wife's motion. Wife's sole contention on appeal is that the court abused its discretion in denying her request for attorney fees. In the ensuing discussion, we have concluded that the order setting aside the judgments and stipulation should be affirmed but that the order denying wife's request for attorney fees should be reversed.

I

TIMELINESS OF WIFE'S MOTION

The wife's motion was brought pursuant to Code of Civil Procedure section 473 and under the equitable jurisdiction and powers of the superior court.[1] Section 473 requires that a motion for relief brought under

---

[1] All statutory references are to the Code of Civil Procedure unless otherwise indicated.

Section 473 provides in pertinent part as follows: "The court may, upon such terms

that section must be made within a reasonable time, but in no case to exceed six months "after such judgment, order or proceeding was taken. . . ."

In the instant case, wife filed her motion on July 22, 1980, just one day less than six months after the entry of the interlocutory judgment on January 23, 1980. Husband argues that wife's motion was not timely (1) because it was not filed within a reasonable time after entry of the judgment and (2) because it was not filed within six months after the oral stipulation was entered into in open court.

■■ As to "reasonable time," the court specifically found that the motion was timely made. The trial court has discretionary power to decide issues growing out of a motion for relief under section 473 and its determinations will not be disturbed by a reviewing court unless there is a clear showing of abuse of discretion, particularly where the result is to compel a hearing on the merits. (*Sanchez v. Sanchez* (1969) 273 Cal. App.2d 159, 163 [77 Cal.Rptr. 884]; *Fidelity Fed. Sav. & Loan Assn. v. Long* (1959) 175 Cal.App.2d 149, 152 [345 P.2d 568].) Legal discretion has been defined as an impartial discretion taking into account all relevant facts, together with legal principles essential to an informed and just decision; it is ""not a mental discretion, to be exercised *ex gratia*, but a legal discretion, to be exercised in conformity with the spirit of the law and *in a manner to subserve and not to impede or defeat the ends of substantial justice.*"" (Italics added; *Martin v. Alcoholic Bev. etc. Appeals Bd.* (1961) 55 Cal.2d 867, 875-876 [13 Cal.Rptr. 513, 362 P.2d 337], quoting *Bailey v. Taaffe* (1866) 29 Cal. 422, 424; *Blake v. State Personnel Board* (1972) 25 Cal.App.3d 541, 553 [102 Cal.Rptr. 50].) The test of abuse of discretion is whether or not the trial court exceeded the bounds of reason, all of the circumstances before it being considered. (*In re Marriage of Connolly* (1979) 23 Cal.3d 590, 598 [153 Cal.Rptr. 423, 591 P.2d 911].) In the case at bench, it cannot be said that the trial court exceeded the bounds of reason in finding that the motion was timely made. The record shows that in February or March of 1980 wife began to have serious doubts about the validity of

as may be just, relieve a party or his legal representative from a judgment, order, or other proceeding taken against him through his mistake, inadvertence, surprise or excusable neglect. Application for such relief must be accompanied by a copy of the answer or other pleading proposed to be filed therein. Otherwise the application shall not be granted, and must be made within a reasonable time, in no case exceeding six months, after such judgment, order or proceeding was taken; . . ."

the interlocutory judgment and that her attorney notified husband's attorney that investigation and evaluation of wife's position would be made. Wife gave serious thought to going back into court but her then counsel said he would not represent her. Consequently, she began seeking new counsel. Taking into account all of the circumstances including the time reasonably necessary to obtain new counsel, conduct an investigation of the case, and prepare her motion papers, the court did not abuse its discretion in finding that the motion was filed within a reasonable time.

Husband also argues that wife's motion was not timely because it was filed more than six months after the parties entered into the oral stipulation upon which the judgment was based. Husband contends that in order to set aside the stipulation wife must have either brought her motion under section 473 within six months of the date of the stipulation or she must have established facts showing extrinsic fraud or extrinsic mistake. This contention also lacks merit.

In the case of a default judgment, a party must bring a motion for relief under section 473 within six months of the date of the default rather than the date of entry of the judgment. (*Weiss* v. *Blumencranc* (1976) 61 Cal.App.3d 536, 541 [131 Cal.Rptr. 298].) The rationale for the rule is that if the judgment is set aside but the default remains, the court can only enter a new judgment upon the same terms as the judgment set aside. (*Ibid.*) Husband argues that by analogy the significant event from which the section 473 six months runs to set aside a stipulated judgment is the date of the stipulation rather than the date of entry of the judgment. Husband reasons that even if the motion to set aside the judgment were successful, if it were brought more than six months after the stipulation, the stipulation would be left intact so that the court would be obligated to enter a new judgment upon the same terms as the judgment just set aside.

A party seeking relief under section 473 must act within six months "after such judgment, order or proceeding *was taken.*" (Italics added.) "In the case of an ordinary judgment, given after answer, the time runs from its *rendition*, which is when the judgment 'was taken.' (*Brownell* v. *Superior Court* (1910) 157 C. 703, 707, 109 P. 91.) [¶] . . . Where the judgment is by *default*, the time may start running sooner: The *clerk's entry of default* is a 'proceeding' taken against the party which marks the beginning of the period, even though judgment on the default

is not entered until later. [Citations.]" (5 Witkin, Cal. Procedure (2d ed. 1971) Attack on Judgment in Trial Court, § 151, p. 3726.)

A stipulation in open court has been held to be a "proceeding" within the meaning of section 473, and subject to the remedial provisions of that section. (*In re Marriage of Carter* (1971) 19 Cal.App.3d 479, 489 [97 Cal.Rptr. 274]; *Troxell v. Troxell* (1965) 237 Cal.App.2d 147, 152 [46 Cal.Rptr. 723].) Neither *Marriage of Carter* nor *Troxell*, however, answers the question as to when the six months' period commences to run for an attack on a judgment based on the stipulation. In *In re Marriage of Carter*, the wife brought a section 473 motion to set aside a property settlement stipulation entered into in open court which motion was brought before a judgment based on the stipulation was entered. The reviewing court observed, citing *Troxell*, that section 473 is applicable to a motion to set aside a stipulation. In *Troxell*, husband and wife entered into an oral stipulation in open court for disposition of the marital property and proceeded to try the issue of fault. Two months after entry of the judgment, wife made a motion to set aside the interlocutory judgment under section 473 as well as on equitable grounds. The motion was denied and wife appealed. On appeal husband argued that wife's motion was properly denied because relief under section 473 was limited to default proceedings. The *Troxell* court held that the language of section 473 was broad enough to encompass actions which proceed to trial and judgment in an adversary manner, not just by way of default. The court further pointed out that a stipulation results in a nonadversary proceeding as to the matters stipulated so that a motion for relief from a stipulation because of inadvertence, neglect, mistake or fraud in effect seeks a trial on the merits as to the issues covered by the stipulation. Accordingly, the court held that wife's motion under section 473 was a proper method of attempting to set aside the property settlement stipulation. *Troxell*, however, did not involve the question whether the six months' statutory period ran from the date of entry of the judgment or the date of the stipulation since the motion was brought well within six months of both events.[2] Thus, neither *Carter* nor *Troxell* mandates the conclusion that a motion under section 473 to set aside a stipulated interlocutory judgment of dissolution must be made within six months from the date of the stipulation rather than the date of the entry of judgment.

---

[2]We further note that although the *Troxell* court states that a section 473 motion is an appropriate method of seeking to set aside a stipulation even after entry of the judgment, the wife's motion in *Troxell* was to set aside the interlocutory judgment. The

Where a property settlement agreement has been incorporated in the interlocutory dissolution decree, the agreement merges into and is superseded by the decree and "the value attaching to the separation agreement is only historical." (Italics omitted; *Hough* v. *Hough* (1945) 26 Cal.2d 605, 610 [160 P.2d 15]; *Broome* v. *Broome* (1951) 104 Cal. App.2d 148, 154 [231 P.2d 171].) The injured party is relegated to an attack upon the decree and not the contract. (*Zastrow* v. *Zastrow* (1976) 61 Cal.App.3d 710, 713-714 [132 Cal.Rptr. 536]. See *Kulchar* v. *Kulchar* (1969) 1 Cal.3d 467, 470-471 [82 Cal.Rptr. 489, 462 P.2d 17, 39 A.L.R.3d 1368].) "If the agreement is expressly set out in the decree, and the court orders that it be performed, it is clear that a merger is intended." (*Flynn* v. *Flynn* (1954) 42 Cal.2d 55, 58 [265 P.2d 865].) What is true of a property settlement agreement would perforce be true of a stipulation in open court for the entry of an interlocutory judgment of dissolution disposing of the properties of the parties in accordance with the stipulation. It is obvious that a merger is intended. Once judgment is entered ordering disposition of the property in accordance with the stipulation, the stipulation is merged into and superseded by the judgment. Therefore, in the case at bench, the measuring event for the purpose of a section 473 motion was the date of entry of the judgment. ▮ ▮▮▮ Vacation of the stipulated judgment would of necessity set aside the stipulation which was merged into the judgment.[3]

We conclude that wife's motion to set aside the judgment and the underlying stipulation on which it was based was timely under section 473.

---

court treated the motion to set aside the interlocutory judgment as a motion to set aside the stipulation.

[3]Even if it is assumed arguendo that the stipulation retained a separate existence after entry of the stipulated judgment, the equitable power of a court to set aside a stipulation exists independent of section 473 and is not limited to a showing of extrinsic fraud or extrinsic mistake. It is within the discretion of the court to set aside a stipulation on grounds of inadvertence, excusable neglect, fraud, mistake, or where the facts stipulated have changed, or there has been a change in underlying conditions that could not have been anticipated, or where special circumstances exist rendering it unjust to enforce the stipulation. (*People* v. *Trujillo* (1977) 67 Cal.App.3d 547, 555 [136 Cal.Rptr. 672]; 3 Cal.Jur.3d, Agreed Case and Stipulations, § 33, pp. 304-306; see, e.g., *Moffitt* v. *Jordan* (1900) 127 Cal. 628, 629 [60 P. 173] [discussion of motion for relief from stipulation, without reference to § 473]; *Winn* v. *Winn* (1956) 143 Cal. App.2d 184, 189-190 [299 P.2d 721] [discussion of court's power to set aside stipulations with no mention of § 473); *Warburton* v. *Kieferle* (1955) 135 Cal.App.2d 278, 286 [287 P.2d 1] [stating rule that a party must make a "timely" application for relief from stipulation, without reference to the time limits imposed by § 473].)

## II

### JUSTIFICATION FOR SETTING JUDGMENT ASIDE

■ The trial court expressly found both fraud and mistake and on those grounds set the stipulated interlocutory judgment aside. ■ An appellate court will not interfere with the trial court's exercise of discretion under section 473 unless there has been a clear abuse of discretion. (*Estate of Lewy* (1976) 61 Cal.App.3d 635, 645 [131 Cal.Rptr. 291]; *In re Marriage of Carter, supra*, 19 Cal.App.3d 479, 494.) ■ The affidavits favoring the contention of the prevailing party establish not only the facts therein stated but all facts which may be reasonably inferred therefrom. (*Lynch* v. *Spilman* (1967) 67 Cal.2d 251, 259 [62 Cal.Rptr. 12, 431 P.2d 636].) ■ Furthermore, if any applicable ground will sustain the trial court's order, the ruling will not be disturbed on appeal, even if made for the wrong reason. (*D'Amico* v. *Board of Medical Examiners* (1974) 11 Cal.3d 1, 19 [112 Cal.Rptr. 786, 520 P.2d 10]; *Davey* v. *Southern Pacific Co.* (1897) 116 Cal. 325, 329 [48 P. 117].)

■ Viewing the evidence in accordance with the foregoing precepts, there is substantial evidence in the record to support the trial court's order. Throughout the marriage it was husband's custom to place the parties' extra money in accounts in the children's names to avoid taxes. Even though the money was placed in the children's names, the parties always continued to treat the money as their own. Wife executed the $130,000 note and the gift tax return because husband told her it was necessary in order to avoid $12,000 in taxes. At that time, husband told wife that, as always, the parties would still have full use of the funds, even though the money was in the children's names. Wife relied on husband's financial expertise.

At the time of the November 5 hearing, a number of factors contributed to the events that resulted in the stipulation. Wife states that she was unprepared to discuss property settlement, believing that the only issue to be addressed was temporary support. Husband dominated wife emotionally. She felt compelled to follow his lead because of his expertise as an accountant, her financial unawareness and the insecurity and doubts about her judgment which were fostered during her marriage with husband. Further, according to wife, husband told her that they would have to pay a 40 percent capital gains tax if they did not contin-

ue to treat the $250,000 as a "gift." Wife states she was very confused and distressed when the discussion turned suddenly from issues of temporary support to a settlement of the entire case; she was unsure whether she was to participate in what was happening; most of the talking was done by husband's attorney; her own attorney did not appear to understand issues relating to husband's partnership interest in the accounting firm and was not well prepared. Wife acquiesced in the proposal because of the circumstances of the hallway negotiations and the additional pressure to finish the case before lunchtime.

The record supports the view that both parties lacked donative intent with respect to the "gifts" to the children. The parties had a history of making "gifts" to the children while continuing to use the money as their own. Wife stated that husband used his financial expertise to manipulate the parties' money, always telling her that it was necessary to take such steps for tax purposes, but that the money would still be the parties' own. The stipulation giving husband sole control over investment of the "children's money" in effect left the funds in husband's hands. At the time of the settlement negotiations, there was some discussion relative to the "trust" funds that husband might want to move and use the funds to purchase a new house. Yet, when wife applied to husband for a loan to purchase a van, a more suitable vehicle in which to transport two young children than the two-seat Corvette she was awarded in the property settlement, husband refused, stating he would not loan her money through the trust.

The court was also entitled to consider that all but $44,000 of the $250,000 of the "children's money" had been spent, chiefly for the benefit of husband. There was no trust instrument and no terms of any trust. In addition, so far as the record shows, no funds were ever disbursed for the benefit of the two minor children, one of whom is seriously handicapped.

Wife apparently believed that, even though the parties had been appointed trustees of the "children's money," the parties would still have the use of the funds, as always. The parties had in the past made outward manifestations of transfer without in fact giving up use and control of the funds. From all the circumstances in the record, the court could find that both parties lacked donative intent. Without such intent, no gift had been made. Therefore, the court could reasonably infer that

both parties were operating under a grievous mistake of law at the time the agreement was entered into, and as shown by subsequent events.

Further, under the evidence the court would have been justified in finding that the parties were mistaken as a matter of law insofar as the gift purported to be one under the Uniform Gifts to Minors Act. (Civ. Code, § 1154 et seq.) ■ Civil Code section 1156 provides for the manner of making a gift under the act.[4] There was no evidence that the $130,000 taken directly from the sale of the Ohio house and used for a down payment on the Santa Ana house was ever transferred in any manner to the children. The balance of the money, used to purchase time certificates of deposit, could conceivably be interpreted as gifts under the act, but the parties subsequently used $16,000 and $60,000 for their own purposes. In order to qualify as a gift under the act, the gift must be "irrevocable and [convey] to the minor indefeasibly vested legal title to the custodial property...." (Civ. Code, § 1157.) As outlined above, there was evidence the parties never intended to convey indefeasible title, but continued to treat the money as their own. Moreover, the "notes" of $130,000, $16,000 and $60,000 cannot qualify as custodial property. Civil Code section 1155 states that a "security," the only class of custodial property into which the notes could possibly fall, "does not include a security of which the donor is the issuer." (Civ. Code, § 1155, subd. (o).) Thus under the evidence, the court could have reasonably found that the "gift" failed to qualify under the provisions of the Uniform Gifts to Minors Act.

---

[4]Civil Code section 1156 provides:

"(a) An adult person may, during his lifetime, make a gift of a security, money, a life or endowment insurance policy, or an annuity contract to a person who is a minor on the date of the gift:

"(1) If the subject of the gift is a security in registered form, by registering it in the name of the donor, another adult person, or a trust company, followed in substance, by the words: 'as custodian for _____ (Name of minor) under the California Uniform Gifts to Minors Act.'

"(2) If the subject of the gift is a security not in registered form, by delivering it to an adult person, other than the donor, or to a trust company, accompanied by a statement of gift in the following form, in substance, signed by the donor and the person designated as custodian:

"GIFT UNDER THE CALIFORNIA UNIFORM GIFTS TO MINORS ACT

"I, _____ (Name of donor), hereby deliver to _____ (Name of custodian) as custodian for _____ (Name of minor) under the California Uniform Gifts to Minors Act, the following security(ies): (insert an appropriate description of the security or securities delivered sufficient to identify it or them)

_____
(Signature of donor)

Finally, husband apparently told wife that the parties would suffer severe tax consequences if they did not continue to treat the $250,000 as a "gift." Wife did not discover until February or March of 1980 that the taxes were far less than husband represented.

The record contains adequate evidence to support the order setting aside the stipulated judgment for mistake of law.

## III

### THE DENIAL OF ORAL TESTIMONY

Husband complains that the trial court improperly refused his request to take oral testimony upon the motion. Husband argues that his papers in opposition to wife's motion to set aside the judgment were in the nature of a "demurrer" and that he should have had an opportunity to file declarations or present oral testimony.

The motion under section 473, like other motion matters, is normally heard upon declarations. Husband chose not to submit any declarations in opposition. The court felt that it was sufficiently informed of the facts of the case to make a decision. We cannot say that the court abused its discretion in refusing to allow oral testimony.

---

"_____ (Name of custodian) hereby acknowledges receipt of the above-described security(ies) as custodian for the above minor under the California Uniform Gifts to Minors Act.
"Dated: _____
(Signature of custodian)
"(3) If the subject of the gift is money, by paying or delivering it to a broker or a financial institution for credit to an account in the name of the donor, another adult person or a bank with trust powers, followed, in substance, by the words: 'as custodian for _____ (Name of minor) under the California Uniform Gifts to Minors Act.'
"(4) If the subject of the gift is a life or endowment insurance policy or an annuity contract, such policy or contract shall be assigned to the donor, another adult person, or a bank with trust powers, followed in substance by the words: 'as custodian for _____ (Name of minor) under the California Uniform Gifts to Minors Act.'
"(b) Any gift made in a manner prescribed in subdivision (a) may be made to only one minor and only one person may be the custodian.
"(c) A donor who makes a gift to a minor in a manner prescribed in subdivision (a) shall promptly do all things within his power to put the subject of the gift in the possession and control of the custodian, but neither the donor's failure to comply with this subdivision, nor his designation of an ineligible person as custodian, nor renunciation by the person designated as custodian affects the consummation of the gift."

## IV

### ATTORNEY FEES

 Wife appeals solely on the issue of attorney fees. In conjunction with the motion to set aside the judgment, wife requested attorney fees. The court summarily denied the request for attorney fees, without stating any reason or grounds for the ruling.

Civil Code section 4370, subdivision (a), provides that the court may make a pendente lite award for costs and attorney fees reasonably necessary to conduct family law litigation.[5] Such an award of attorney fees and costs is within the discretion of the trial court, and the court's ruling will not be disturbed on appeal unless there is a clear showing of abuse. (*In re Marriage of Lopez* (1974) 38 Cal.App.3d 93, 113 [113 Cal.Rptr. 58].) However, "where the wife has inadequate funds to maintain the case in the trial court or take an appeal, the husband is able to pay a reasonable sum, and neither the initial proceeding nor the appeal are without substantial merit, the trial court commits error in denying any allowance for fees and costs. (Cf. *Norris* v. *Norris* (1942) 50 Cal.App.2d 726, 735 [123 P.2d 847].)" (*In re Marriage of Holmgren* (1976) 60 Cal.App.3d 869, 873 [130 Cal.Rptr. 440].)

With her moving papers, wife filed an income and expense declaration showing no income except for the spousal and child support awarded under the terms of the interlocutory judgment. Wife also attached a schedule showing husband's net income from the accounting partnership to have been $54,898 in 1976, $66,539 in 1977, $86,832 in 1978, and estimated husband's net income for 1979 at $78,800. Wife's motion was not without substantial merit. In view of the state of the re-

---

[5]Civil Code section 4370, subdivision (a), states as follows: "(a) During the pendency of any proceeding under this part, the court may order the husband or wife, or father or mother, as the case may be, to pay such amount as may be reasonably necessary for the cost of maintaining or defending the proceeding and for attorneys' fees; and from time to time and before entry of judgment, the court may augment or modify the original award for costs and attorneys' fees as may be reasonably necessary for the prosecution or defense of the proceeding or any proceeding relating thereto. In respect to services rendered or costs incurred after the entry of judgment, the court may award such costs and attorneys' fees as may be reasonably necessary to maintain or defend any subsequent proceeding therein, and may thereafter augment or modify any award so made. Attorneys' fees and costs within the provisions of this subdivision may be awarded for legal services rendered or costs incurred prior, as well as subsequent, to the commencement of the proceeding."

cord with respect to wife's inability to pay and husband's ability to pay, we conclude that the trial court erred in denying any allowance for attorney fees.

Husband attempts to argue now on appeal that wife did have the ability to pay her own attorney fees. Husband states that the interlocutory judgment awarded wife a condominium "with a minimum $60,000 equity,"[6] one-half of the family silver, certain furniture, clothing, jewelry, and personal items, the Corvette automobile as well as $2,000 per month in child and spousal support. Husband fails to appreciate that none of the property, aside from the $2,000 child and spousal support, is in a liquid form, that wife's uncontroverted declaration shows that her monthly expenses for the support of herself and the two minor children exceed the monthly allowance for child and spousal support, and that almost all the items are needed for everyday personal use and are not available for disposal. It is the law of this state that a former wife is not required to impair her capital in order to finance marital dissolution litigation. (*In re Marriage of Borson* (1974) 37 Cal.App.3d 632, 639 [112 Cal.Rptr. 432].) Moreover, husband has conveniently ignored the fact that these assets were awarded to wife under the terms of the interlocutory judgment. That judgment has now been set aside.

"From [wife's] affidavit and the evidence in the record it appears to be uncontroverted that [wife] did not have the funds necessary to prosecute the [motion] or to pay attorneys fees, that respondent is able to pay a reasonable sum therefor, and that the [motion] was taken in good faith and presented debatable questions which were not without substantial merit or controversy. Under the circumstances, it must be held that the court erred in denying [wife's] application for a reasonable allowance for costs and counsel fees ...." (*Hunter* v. *Hunter* (1962) 202 Cal.App.2d 84, 93 [20 Cal.Rptr. 730].)

Accordingly, the order of the trial court should be reversed insofar as it denies any allowance to wife for attorney fees.

### DISPOSITION

The portion of the order setting aside the stipulated interlocutory judgment and final judgment of dissolution is affirmed; the portion of

---

[6]This assertion is in curious contrast to husband's argument up to now that neither residence has any equity because of the "loans" from the children.

the order denying attorney fees to wife is reversed and remanded for consideration of a reasonable award for attorney fees.

Morris, Acting P. J., and Gardner, J.,* concurred.

A petition for a rehearing was denied February 18, 1982, and the petition of appellant Husband for a hearing by the Supreme Court was denied April 14, 1982.

---

*Retired Presiding Justice of the Court of Appeal sitting under assignment by the Chairperson of the Judicial Council.