[No. D016975. Fourth Dist., Div. One. Nov. 16, 1994.]

In re the Marriage of MARILYN and TONY M. GRISSOM.
MARILYN GRISSOM, Respondent, v.
TONY M. GRISSOM, Appellant.

## COUNSEL

Wayne Yee for Appellant.

Sharron Voorhees for Respondent.

## OPINION

**TODD, Acting P. J.**—Tony M. Grissom (Husband) appeals the April 22, 1992, order granting the motion of Marilyn Grissom (Wife) to set aside an April 25, 1980, "Interlocutory Judgment of Dissolution of Marriage" as well as a marital settlement agreement, on the grounds Wife was fraudulently induced to sign a document stipulating to property and support provisions and the placement of the dissolution petition on the default calendar. Husband contends the trial court abused its discretion in setting aside the interlocutory decree. He also argues there was no extrinsic fraud, Wife was not free from fault, Wife failed to exercise diligence in seeking relief and there was no showing a different disposition would have been made if there were no fraud.

### FACTS

Husband and Wife were married on July 3, 1971, and separated March 3, 1980, a period of eight years and eight months; they had two daughters, born January 9, 1973, and April 2, 1976.

On March 10, 1980, Wife, represented by Attorney Ivan Trahan, filed a petition for dissolution of marriage and an order to show cause for temporary orders. The hearing on the order to show cause, originally set for March 26, 1980, was continued to April 15, 1980.

Approximately April 7, 1980, Wife and Husband reconciled and began living together again. They agreed not to proceed with the dissolution of marriage; Husband told Wife it would be necessary for her to sign some papers in his attorney's office to stop the proceedings. On April 14, 1980, Wife was alone with Husband in Husband's attorney's office when she was told to sign a document, opened to the signature page, on the attorney's desk. (It was customary for Wife to sign the couple's tax returns when presented to her in a similar manner.) Wife signed the document, which was an "Appearance, Stipulation and Waiver." The document also bears the undated signatures of Trahan, Wife's attorney, and Jeffrey Isaac, Husband's attorney; the signatures were not there when Wife signed the document. The record

contains two signature pages; Isaac's signature appears to be different on the two signature pages.

Among other things, the "Appearance, Stipulation and Waiver" provided: (1) Husband and Wife agreed the dissolution of marriage petition could be heard without further notice at any time convenient to the court on the default calendar; (2) joint custody of the two children, with physical custody awarded to Wife; (3) commencing April 1, 1980, combined child and spousal support of $1,100 per month, commencing July 1, 1980, combined child and spousal support of $800 per month, commencing October 1, 1980, combined child and spousal support of $600 per month, thereafter commencing January 1, 1981, child support of $400 per month, with the issue of spousal support reserved for four years, at which time spousal support shall terminate; and (4) use of the parties' income tax refund to pay certain debts. The "Appearance, Stipulation and Waiver" also divided property, in pertinent part, as follows: Wife was to receive as her sole property one residence, one savings account and a 1979 Ford Mustang automobile; Husband was to receive as his sole property two residences, a five-unit apartment property, one-half of a real property parcel in Las Vegas, Nevada, one-half of a "speculated property" located in Las Vegas and two bank accounts. As to the residence assigned to Wife, she was to be responsible for the first trust deed of approximately $24,000 and Husband was to be responsible for the second trust deed of approximately $30,000.

On April 15, 1980, Husband appeared in court with his attorney and obtained an interlocutory judgment of dissolution incorporating the terms of the "Appearance, Stipulation and Waiver." Wife and her attorney were not present. The interlocutory judgment of dissolution of marriage was entered on April 25, 1980.

Thereafter, Husband and Wife continued living together. Approximately six months later, Attorney Trahan notified Wife that the dissolution of marriage had become final. When Wife confronted Husband with this information, he told her that he had instructed his attorney to dismiss the proceedings.

In 1990, Wife learned that Husband had not dismissed the dissolution of marriage proceedings, but rather had completed the proceedings. She obtained copies of the file from the superior court and confronted Husband who told her that the divorce agreement did not matter since it had been so long ago and they had a common law marriage, and "all property was community property." Wife consulted an attorney one week later who told her there was nothing she could do about it.

In January 1991, she forwarded the documents to an attorney in San Diego, who went on medical leave in August 1991. Wife was referred to another attorney, and on December 19, 1991, she filed the motion to vacate and set aside the interlocutory judgment and marital settlement agreement.

In a declaration accompanying her motion, Wife stated: "Had my husband informed me that the [Appearance, Stipulation and Waiver] I was signing was not required to dismiss the [dissolution] proceedings or had he informed me of the nature of the document I was signing, I would not have signed it on April 14, 1980. Had the document been presented to me as a final settlement, I would have consulted my attorney as to the proposed division of assets and the support and would not have agreed to the terms and conditions stated in the 'agreement.' "

From April 7, 1980, until this proceeding to set aside the interlocutory judgment of dissolution, Husband and Wife, with a few exceptions, had continued a marital relationship. Except for brief periods of times, the parties continued cohabiting, most recently in Riverside, California. Wife performed domestic duties for Husband and attended Husband's work-related functions. They celebrated their wedding anniversary each year and Husband regularly acknowledged Valentine's Day, Wife's birthday and Mother's Day with cards addressed to "wife." Wife took business trips with Husband and attended school functions with him as a married couple. They filed joint income tax returns as a married couple through calendar year 1990. They acquired various parcels of real property as joint tenants. They also acquired interests in various limited partnerships; in June 1988 they signed an agreement defining their respective interest in one limited partnership as "community property in joint tenancy." They held an interest in another limited partnership as "husband and wife." The parties opened joint checking and savings accounts and stated in a credit application they were married. Title to property ostensibly awarded to either party in the 1980 interlocutory judgment remained as it was in 1980.

In its written findings, the trial court found Wife was fraudulently induced to sign the "Appearance, Stipulation and Waiver," and Husband's behavior since April 1980 was consistent with the finding Husband fraudulently induced Wife to sign the document.

DISCUSSION

I

The parties agree the applicable standard of review for this equitable proceeding is abuse of discretion.

Wife's motion attacking the judgment was filed long after the time for ordinary direct attack and long after the six-month period for relief under Code of Civil Procedure section 473 had passed. ■ However, " 'where the legal judgment was obtained . . . through fraud, mistake, or accident, or where the defendant in the action, having a valid legal defense on the merits, was prevented in any manner from maintaining it by fraud, mistake, or accident, and there had been no negligence, laches, or other fault on his part . . . , then a court of equity will interfere at his suit, and restrain proceedings on the judgment which cannot be conscientiously enforced. . . . The ground for the exercise of this jurisdiction is that there has been no fair adversary trial at law.' [Citation.]" (*Olivera* v. *Grace* (1942) 19 Cal.2d 570, 575 [122 P.2d 564, 140 A.L.R. 1328].) Wife's motion is a proper means of raising grounds for such equitable relief. (*In re Marriage of Guardino* (1979) 95 Cal.App.3d 77, 86-87 [156 Cal.Rptr. 883].) The motion is addressed to the sound discretion of the trial court, and, in the absence of a clear showing of abuse of discretion, the order will not be disturbed on appeal. (*Id.* at p. 87.) As will appear below, we reject Husband's argument that it was an abuse of discretion to set aside the interlocutory decree, which had been entered more than a decade earlier.

II

■ The most common ground for such equitable relief is extrinsic fraud, which essentially means that "a party has been denied by his opponent or otherwise an opportunity to be heard or to fully present a claim or defense." (*In re Marriage of Brennan* (1981) 124 Cal.App.3d 598, 603 [177 Cal.Rptr. 520].) In *Kulchar* v. *Kulchar* (1969) 1 Cal.3d 467, 471 [82 Cal.Rptr. 489, 462 P.2d 17, 39 A.L.R.3d 1368], our Supreme Court discussed extrinsic fraud as follows: "Extrinsic fraud usually arises when a party is denied a fair adversary hearing because he has been 'deliberately kept in ignorance of the action or proceeding, or in some other way fraudulently prevented from presenting his claim or defense.' [Citation.] 'Where the unsuccessful party has been prevented from exhibiting fully his case, by fraud or deception practiced on him by his opponent, as by keeping him away from court, a false promise of a compromise; or where the defendant never had knowledge of the suit, being kept in ignorance by the acts of the plaintiff; or where an attorney fraudulently or without authority assumes to represent a party and connives at his defeat; or where the attorney regularly employed corruptly sells out his client's interest to the other side,—these, and similar cases which show that there has never been a real contest in the trial or hearing of the case, are reasons for which a new suit may be sustained to set aside and annul the former judgment or decree, and open the case for a new and a fair hearing.' (*United States* v. *Throckmorton* (1878) 98 U.S. 61, 65-66 [25 L.Ed.2d 93, 95].)"

As our Supreme Court observed in a later case, there is not an abstract formula for determining whether a particular case involves extrinsic fraud as opposed to intrinsic fraud, which is not grounds for relief: " 'It is necessary to examine the facts in the light of the policy that a party who failed to assemble all his evidence at the trial should not be privileged to relitigate a case, as well as the policy permitting a party to seek relief from a judgment entered in a proceeding in which he was deprived of a fair opportunity fully to present his case.' [Citation.]" (*In re Marriage of Modnick* (1983) 33 Cal.3d 897, 905 [191 Cal.Rptr. 629, 663 P.2d 187].)

■ Where a confidential relation exists between the parties and one of the parties signs an instrument without reading it in reliance on false representations as to its contents by the other party, the instrument may be avoided. (*In re Marriage of Cairo* (1988) 204 Cal.App.3d 1255, 1261 [251 Cal.Rptr. 731].) It is a question of fact whether a party has been induced to sign a document by the fraudulent misrepresentations of another party about the nature of the document. (*Ibid.*) "If supported by substantial evidence, the fact finder's resolution of this question will not be disturbed on appeal . . . . When reviewing the sufficiency of the evidence, this court must view all factual matters most favorably to the prevailing party and in support of the judgment." (*Ibid.*, citations omitted.) Here, there is ample evidence to support the trial court's finding that Husband fraudulently induced Wife to sign the "Appearance, Stipulation and Waiver" document by representing to her that it was a dismissal. There is also ample evidence to support the trial court's finding that Husband's behavior since 1980 was consistent with such fraudulent inducement as Husband and Wife continued to live as a married couple and did not follow through with the various property disbursements outlined in the "Appearance, Stipulation and Waiver."

A case with a similar fact situation is *In re Marriage of Jones* (1987) 195 Cal.App.3d 1097 [241 Cal.Rptr. 231]. In *Jones*, after the husband and wife had executed a marital settlement agreement, the husband filed the petition for dissolution but, thereafter, told the wife " ' "to forget it" ' and ' "not [to] worry" ' because [he] 'had told his attorney to cancel the papers . . . .' " (*Id.* at p. 1101.) Contrary to his promise, the husband obtained an interlocutory judgment of dissolution at a default hearing. The husband contributed to the wife's support for the next four years. When he discontinued the support, the wife retained counsel and filed a petition for dissolution. When informed a final judgment of dissolution had been entered 19 months earlier, the wife filed a motion to set aside and vacate the judgment on the ground of fraud. The Court of Appeal affirmed the trial court's finding of extrinsic fraud. The Court of Appeal observed:

"When Husband told Wife he was cancelling the papers, Husband lulled Wife into believing that the dissolution would not proceed, deliberately

keeping Wife in ignorance of the proceedings. While Husband continued to contribute to Wife's support, there was no reason for Wife to believe her marital status had changed or that her property rights needed protection. Although Wife may have executed documents, she reasonably believed the documents had no legal effect on her marital status or her property rights. . . . Based upon Husband's representations and actions, Wife discontinued her involvement in the adversary proceeding while Husband proceeded to obtain a default judgment.

". . . Because Husband obtained a dissolution, contrary to his representations, the finding of extrinsic fraud was appropriate." (*Jones, supra,* 195 Cal.App.3d at pp. 1102-1103, fns. omitted; see also *In re Marriage of Brennan, supra,* 124 Cal.App.3d 598 [dissolution decree set aside when husband obtained decree contrary to his representations that he would not proceed and the dissolution would be dropped].)

Husband argues that because Wife was represented by counsel in 1980 there was no extrinsic fraud; if there was fraud it was of the intrinsic variety. (See *In re Marriage of Stevenot* (1984) 154 Cal.App.3d 1051, 1063 [202 Cal.Rptr. 116] ["[A]bsent egregious conduct such as concealment of the existence of community assets or concealment of the existence of the proceedings, when a party requesting equitable relief has been represented by counsel in the proceedings, any fraud has been found to be intrinsic, rather than extrinsic, and insufficient to set aside a judgment and marital settlement agreement."].) Under the circumstances presented here, we find the argument unpersuasive.

█  We acknowledge courts generally have deemed fraud to be intrinsic if the party seeking to set aside the judgment was represented by counsel in the underlying proceeding. (See, e.g., *Boeseke* v. *Boeseke* (1974) 10 Cal.3d 844 [112 Cal.Rptr. 401, 519 P.2d 161]; *In re Marriage of Wipson* (1980) 113 Cal.App.3d 136 [169 Cal.Rptr. 664].) However, as the law has evolved, we believe representation by counsel is not decisive; rather, it is one circumstance to be considered in determining whether fraud has been practiced. (See *In re Marriage of Brennan, supra,* 124 Cal.App.3d 598, 604.) For example, in *In re Marriage of Jones, supra,* 195 Cal.App.3d 1097, 1102-1103, although the Court of Appeal, in holding there was extrinsic fraud, noted the wife was not represented by counsel who could have apprised her of her rights, the appellate court also said this factor was not determinative. (*Id.* at p. 1103, fn. 7.)

Also, in *In re Marriage of Modnick, supra,* 33 Cal.3d 897, the husband's declarations and testimony indicated he had only one bank account containing $7 when in fact he knew of another account containing $15,000 in

community funds. The wife, who had been represented by counsel in the dissolution proceeding, first learned of the account two years after the interlocutory decree had been entered, when the Internal Revenue Service audited the couple for some predissolution tax years. The wife moved to set aside the decree based on fraud, but then dropped the motion after the husband told her to contact his attorney to arrange a settlement. No settlement was reached, and in the meantime a final judgment of dissolution was entered at the husband's request. The wife filed another motion to set aside the motion, which was denied. The Supreme Court reversed.

"When one spouse manages a community asset, he or she exercises control over the property interests of the other spouse. Therefore, the controlling spouse has a duty to disclose the existence of that asset. . . . This fiduciary relationship does not terminate with the separation of the spouses or the commencement of a dissolution proceeding. . . . The duty of disclosure continues until the marriage has been dissolved and the community property divided by the court.

"When a husband fails to reveal the existence of community property during the dissolution proceedings, he 'deprives [his] wife of an opportunity to protect her rights in the concealed assets . . . .' . . . '[S]he [is] left in complete ignorance, and the ownership of the concealed property [is] never fairly before the court for adjudication.' . . . Thus, the nondisclosure constitutes extrinsic fraud and warrants equitable relief from a judgment dividing community property between the parties." (33 Cal.3d at pp. 905-906, citations and fn. omitted.)

In *In re Marriage of Baltins* (1989) 212 Cal.App.3d 66, 87-91 [260 Cal.Rptr. 403], the Court of Appeal couched the issue as whether the husband and wife have truly terminated their confidential relationship inherent in the marriage and elected to deal with each other at arm's length. "[T]he spouse claiming that the parties no longer stand in a confidential relationship has the burden of proving that the statutory presumption has been overcome, and that the parties are dealing at arm's length. [Citation.]" (*Id.* at p. 88.)

■ Thus, the analysis does not end simply because Wife here was represented by counsel. At the time she signed the "Appearance, Stipulation and Waiver," Wife and Husband had begun living together again, they had agreed not to proceed with the dissolution and he had told her it would be necessary for her to sign some papers in his attorney's office to stop the proceedings. They had in essence agreed to stop dealing at arm's length and to resume their confidential relationship. It was not unreasonable for Wife,

who had routinely signed financial documents at Husband's behest without examining them, to rely on Husband's representation that the document she was signing would serve to dismiss the dissolution proceeding. The subsequently obtained signature of Wife's prior attorney on the document does not change our conclusion, given the hasty circumstances surrounding Wife's signing the document and the lack of any date for the attorney's signature. Nor is our conclusion changed by the fact that Wife did not take any action when her attorney telephoned her six months after the "Appearance, Stipulation and Waiver" document was signed to inform her the dissolution was final. She took no action after confronting Husband and accepting his story that he had told his attorney to dismiss the proceedings. This chain of events indicates Wife was not sufficiently free from the influence of Husband to take advantage of the legal advice. In other words, the confidential relationship continued; they were not dealing with each other at arm's length.

## III

Husband contends Wife should be denied equitable relief because she was not free from fault and was not diligent in seeking relief. We disagree.

It is true a judgment should not be granted where "the party requesting equitable relief has been guilty of inexcusable neglect or that laches should attach." (*In re Marriage of Park* (1980) 27 Cal.3d 337, 345 [165 Cal.Rptr. 792, 612 P.2d 882].)

Husband attributes negligence to Wife for not reading the "Appearance, Stipulation and Waiver" before signing it. However, at the time, Wife believed the parties had reconciled, and throughout the marriage she had followed the same pattern of signing financial papers without reading them when requested to do so by Husband. Under these circumstances, we do not find Wife's conduct unreasonable, particularly in light of Husband's awareness of Wife's beliefs and her pattern of acquiescence in his requests on financial matters.

Husband also asserts Wife's set aside motion was filed too long after the interlocutory judgment was entered. "In passing on this argument, the court must look to the extent of prejudice to the opposing party, and to the reasonableness of the moving party in not filing the motion to vacate earlier. . . ." (*In re Marriage of Park, supra*, 27 Cal.3d at p. 345, citations omitted.)

Husband has not articulated any claim of prejudice resulting from the delay.

Husband argues that Wife should have acted when Attorney Trahan telephoned her six months after she signed the "Appearance, Stipulation and Waiver" to inform her the dissolution had become final. Wife did confront Husband, who falsely told her he had instructed his attorney to dismiss the proceedings. At this point, Wife chose to believe Husband, with whom she believed she had reconciled and with whom she was continuing to live as a married couple.

Husband argues Wife lacked diligence because she accepted checks from Husband with the notation of "support." However, this ignores the marital pattern of Wife receiving money from Husband to pay bills for the support of the family.

Finally, Husband argues Wife should have acted in the face of hints Husband made in 1990 that the dissolution had gone through. Wife did then obtain copies of the documents filed in superior court and confronted Husband. Husband again lied—he said the divorce did not matter because it was so long ago and all property was community property. Within a week, Wife contacted an attorney, who incorrectly told her there was nothing she could do. In January 1991, Wife, who was living with Husband in Riverside, forwarded copies of the court documents to one of the leading family law attorneys in San Diego. In August 1991, that attorney advised Wife she was on medical leave and referred her to another attorney. On December 19, 1991, Wife's set-aside motion was filed.

Although the period of more than 10 years is unusually lengthy, under these circumstances, where Husband did everything to perpetrate the fraud, we do not find Wife's delay in filing the motion was unreasonable. In any event, the lack of prejudice is fatal to Husband's claim of this equitable defense.

## IV

Husband contends Wife failed to show that a more favorable result would have resulted had the fraud not occurred as she is required to do. (See *Wilson v. Wilson* (1942) 55 Cal.App.2d 421, 427 [130 P.2d 782].) The contention is without merit.

In a similar case, *In re Marriage of Brennan, supra,* 124 Cal.App.3d 598, 607-608, the Court of Appeal rejected a similar argument: "[Wife] has made a prima facie showing in this respect. She had no hearing on her right to

spousal support. Whether she gets more support or the same when this issue is actually tried is not the question. What is important is that she have her day in court on a matter that can *only* be determined by a court." (*Ibid.,* original italics.) Wife need not demonstrate a different result with certainty. (*In re Marriage of Park, supra,* 27 Cal.3d 337, 346.) "Rather, she must show facts indicating a sufficiently meritorious claim to entitle her to a fair adversary hearing." (*Ibid.*) Wife has done so.

V

There is substantial evidence in this record that Wife was fraudulently induced by Husband to sign the "Appearance, Stipulation and Waiver" and was deprived of a fair adversary hearing. None of the equitable defenses raised by Husband is valid. Accordingly, we conclude the trial court did not abuse its discretion in granting the motion to set aside the interlocutory judgment.

■ In reaching this conclusion, we are mindful of the strong policy favoring finality of judgments. In this regard, we find particularly apropos the observations of the Court of Appeal in *In re Marriage of Baltins, supra,* 212 Cal.App.3d 66, 93:

"The evidence that Husband coerced Wife's consent to an unfair agreement and default judgment is compelling. A court applying equitable principles should not compound the miscarriage of justice by immunizing such a judgment from attack. That is not to say that every instance of pressure on a spouse should establish grounds for later attack on a judgment. It is not unusual in marital contract negotiations to find pressure exerted by one or both spouses and uninformed opinions on the law asserted as fact. But, unless the circumstances of the case are egregious, as they are here, the policy favoring finality should prevail.

"The policy favoring finality is mandated primarily by the need for confidence in the judicial system. . . . Judicial economy is, of course, another important factor for our overburdened courts. The average default hearing, however, usually takes less than 10 minutes. At such a hearing the court seldom has sufficient data to determine whether the agreement is fair to the nonappearing spouse, and thus judicial approval of a submitted agreement is often perfunctory. Where little judicial time and effort has been expended, ' ". . . the factor of judicial economy which otherwise weighs in favor of finality is less strong, and the equitable considerations of fair hearing and of penalizing fraud weigh more compellingly." . . .' . . ." (Citations and fn. omitted.)

## Disposition

The order setting aside the interlocutory judgment, including the "Appearance, Stipulation and Waiver," is affirmed. Husband shall pay Wife's costs on appeal.

Huffman, J., and Di Figlia, J.,* concurred.

---

*Judge of the San Diego Superior Court sitting under assignment by Chairperson of the Judicial Council.