Opinion
 

 RAMIREZ, P. J.
 

 Former wife Kim Varner (wife) appeals from a trial court order denying her motion to set aside the judgment of dissolution of her marriage to her former husband Stephen Varner (husband). The judgment of dissolution had divided the community property of the parties pursuant to a stipulation of the parties. On appeal wife contends, among other things, that husband had failed to disclose to her the extent or the value of the community property at the time she signed the stipulation, and she contends that the trial court erred by refusing to set the judgment aside.
 

 Facts
 

 The parties started living together when wife was 15 years old and husband, who had previously been married and divorced, was 24. The parties married in 1977, when wife was 17, and their first child was bom in 1978. In 1984 they separated, and wife filed a petition for dissolution. By
 
 *131
 
 this time they had three children. The matter was repeatedly continued and was finally taken off calendar in October 1985 when the parties reconciled.
 

 In September of 1989 the parties again separated; by then two more children had been bom to the parties. Wife’s counsel withdrew, and wife continued for a short period without representation. By January 1990, wife had new counsel. In February 1992 counsel for wife filed a 30-day notice asking the court to value numerous business assets as of September 30, 1989, or April 30, 1990, rather than at the time of trial.
 

 In May of 1992 wife filed an amended petition for dissolution. In that petition wife included a list of 32 items of community property assets of the parties that she wished to have disposed of by the court. Included among these were five parcels of real property, seven investment or bank accounts, four businesses, three partnerships, a business center, a note receivable, a life insurance policy, five vehicles, three boats, assets in a Varner Family Trust, and other property unknown to wife.
 

 In May of 1993 a hearing was held on a motion by counsel for wife to withdraw, and on the reasonableness of the fees charged by her attorney to that time. The court permitted counsel for wife to withdraw, but declined to rule on the motion to confirm attorney fees.
 

 The hearing on the dissolution was held July 13, 1993. At that time wife told the court she would like to continue the matter because she had no lawyer. The court denied her request. Before calling husband to the stand, counsel for husband stated “a certain discomfort” in representing husband against wife who was not represented. Counsel then went on to state that “The Court has made its ruling, and obviously made the mling because she had an absolutely outstanding lawyer in Mr. Harding, and probably the finest, if not one of the finest forensic accountants, Mrs. Alexander, working for her.
 

 “It is my understanding that the judgment that’s going to become relevant in these proceedings, a draft judgment was, in fact, deemed by the experts whom she had employed to be a fair resolution of the issues between the parties. I have indicated to her that, in my opinion, my client has offered to her a proposal that is much better than what she would get if we have to proceed to trial. We are now proceeding to trial, and my intention would be to simply work from the draft judgment, establish the amounts that are involved, and let the court make the order that it makes.”
 

 Husband was then called as a witness and testified to the jurisdictional facts relevant to the dissolution. Counsel then presented husband with the
 
 *132
 
 draft judgment and asked, “[D]id that judgment, in fact, provide for an unequal division of community property and debts to your disadvantage? . . to which husband replied, “This one does, yes.”
 

 Husband then testified that his monthly income was about $8,000. He stated that his business was not good the way it had been, and that he was now taking smaller jobs. He testified that wife wanted the parties’ house in Riverside, which was about 5,000 square feet in size, on
 
 21h
 
 acres. Husband stated that wife’s attorney had the house appraised at $500,000 or $550,000, but that he thought it was worth between $600,000 and $700,000, and that it had a debt on it of $160,000. Husband stated that $650,000 was a fair value for the house, resulting in a net value to wife of $490,000 for the house.
 

 Husband then testified to the value of four parcels of real property owned by the parties, properties that were to be awarded to him: a condominium in Laughlin, with a net value after tax liability of $60,000 less the cost of sale; a Bullhead condominium with an equity value of $45,000, also subject to substantial tax liability; a house in Big Bear with a realistic sales price of $300,000, and a debt of $240,000, which would be subject to about $80,000 in tax liability if it were sold, plus the costs of the sale, with the result that it was really a $45,000 liability rather than an asset; and the Brown Street property on which Varner Construction, Inc., operated, which husband testified was worth about $200,000.
 

 Husband testified that he owned all the stock in a business called Varner Construction, Inc., and that he was a 60 percent partner in Pipeline Specialties, Inc. He also testified that he had an interest in Vamer/Clendenen which owned some land, as well as Group Equity Fund VI. Husband testified that he owned Varner Construction, Inc., prior to his marriage, and that the net value of the business was about zero. He stated that Pipeline Specialties, Inc., had a negative value of about $300,000. He valued Vamer/Clendenen at about $40,000 to $50,000, and Group Equity Fund VI had a value of $7,000. Husband testified that the totality of the various business entities in which he had an interest equaled about zero. He stated that there were several notes receivable from Varner Construction that had no value because they were owed by Varner Construction to Varner Construction, and, similarly, his life insurance policies were “right at the break-even point” and had zero value. Husband then listed the value of several vehicles owned by the parties and the household furnishings, and represented that the total value of the assets to be allocated to wife was $544,830.
 

 Totaling the value of the assets to be awarded to husband, counsel for husband stated that husband would receive assets of a value of $281,000.
 
 *133
 
 Spousal support under the agreement was based on wife’s having zero income. Counsel for husband stated that although under the agreement wife would owe husband an equalization payment of roughly $150,000, husband had offered to let wife keep everything she had and had also agreed to pay off the $160,000 that was owed on the house.
 

 At the end of the hearing the court stated to wife: “Ma’am, I am not your attorney, and I really can’t tell you what to do, but that is a very good disposition in this case if the figures that were given to me are correct.
 

 “Now, I have no idea. You may have some other figures that you feel are appropriate, but assuming that they are correct and backed up by appraisals and that sort of thing, even if they are incorrect a little bit, this is still— . . . were it me, I would take the deal, but that’s your business.”
 

 The hearing was continued for a week. When the matter was again called, counsel for husband stated that the parties had signed the settlement agreement. Under questioning by counsel for husband, each of the parties testified to having voluntarily signed the agreement. On that date, July 20, 1993, the stipulated agreement was entered as a judgment of the court.
 

 The judgment awarded custody and visitation of the children; retained jurisdiction over spousal and child support; and ordered husband to pay wife $6,000 per month as unallocated family support. The judgment then divided the community property of the parties, although no values were attached to the items of property in the judgment. Wife was awarded nine items of property; husband was awarded twenty-one items of property, including all the real property and assets related to the businesses of the parties. Husband also agreed to pay the $160,000 obligation on the house awarded to wife.
 

 On December 10, 1993, wife’s present attorney was substituted in the place of wife and began his vigorous representation of wife. On January 13, 1994, within six months of entry of the judgment, wife filed a motion to set aside the stipulation for judgment and the judgment on three grounds: first, Code of Civil Procedure section 473; second, the inherent equitable power of the court to set aside judgments obtained through fraud, duress and overreaching; and, finally, Family Code sections 2120, 2121 and 2122 “which effectively extinguish the distinction between extrinsic and intrinsic fraud, in dissolution proceedings, and greatly expand fraud to include non-disclosure, misconduct and perjury, as well as mental incapacity of the disadvantaged spouse.”
 

 
 *134
 
 In anticipation of a hearing on the motion wife submitted a psychological evaluation indicating that wife had an intelligence quotient of 75. The report went on to state that “On the surface, the behavior of this woman is characterized by submissiveness, dependency, and the seeking of affection, attention, and security. A fear of abandonment often compels her to be overly compliant and obliging. She may be quite naive about interpersonal matters . . . .”
 

 Wife submitted to the court an appraisal of two business properties awarded to husband in the judgment which indicated the two properties had a combined value of $1,060,000. Wife also filed a preliminary appraisal of Varner Construction, Inc., that concluded that the “fair market value of Varner Construction, Inc., as of fiscal year end, April 30, 1993, is in the range of $2,000,000.00 to $2,750,[000.00]” rather than the zero testified to by husband. The report also indicated that the true value of Pipeline Specialties, Inc., was in the range of $300,000 to $600,000; the 60-percent interest of the parties in Pipeline Specialties, Inc., was therefore $180,000 to $360,000. The report indicated that Varner Construction, Inc., was incorporated in 1984 and the stock in the corporation was entirely owned by the parties. The corporation reached its highest levels of revenue and profit in 1989 at which time gross revenues exceeded $11.5 million, and profit exceeded $500,000. The appraiser indicated that the preliminary report was made without a complete record of the history of the businesses or of the other business entities in which the parties might have had an ownership interest.
 

 Submitted to the court along with the motion to set aside the judgment was a declaration by a neighbor of wife’s who stated that wife had come to her in tears after the dissolution hearing and had told her she sensed that her husband was not-telling the truth but she did not know how to prove it, and that even the judge at the hearing had told her she should take what her husband was offering. The neighbor stated it was she who had helped wife get the appraiser and the lawyer representing wife at this point in the proceedings, and that wife had said that for the first time she felt that her views were being heard and her interests looked out for.
 

 Wife further submitted to the court a declaration by the accountant who had been hired by counsel for wife to appraise the community property in 1990. The accountant submitted a declaration stating that she had had difficulty in obtaining from husband the documents necessary to complete her analysis, and she attached a declaration from October 1991 in which she
 
 *135
 
 had outlined those difficulties. The 1994 declaration stated that the accountant had been forced to rely on the representations of husband and his attorney in preparing her valuation of the community property.
 
 [1]
 

 Counsel for each party submitted excellent briefing on the issues raised by the motion to set aside, and each party submitted documentary evidence in support of its position. A hearing on the motion to set aside the judgment was held in May 1994, and the matter was taken under submission.
 
 [2]
 
 On June 22, 1994, the court denied, by minute order, the motion to set aside the judgment.
 

 Wife then filed a request for a statement of decision pursuant to Family Code section 2127,
 
 [3]
 
 That motion was denied by minute order August 18, 1994, with the statement that “Pursuant to [Family Code section] 2127 the court need only give a statement of decision where it has resolved controverted factual evidence. The court finds that a resolution on pure questions of law do not require findings."
 

 A hearing was held in November 1994, apparently on a motion by husband to modify the custody and support provisions of the stipulated judgment. Following the hearing the court ordered that wife was to receive $930 per month in child support and $870 per month as spousal support, for a total support payment of $1,800; this order modified the family support to wife of $6,000 per month agreed to by the parties in the stipulated judgment. The modification order further states that “Orders relating to child custody and visitation are made as set forth on the attachment entitled ‘Order
 
 *136
 
 Pursuant To Referral To Mediation* which is ordered filed.” The mediation order referred to is not included in the record on appeal, but it may also have altered the custody and visitation provisions of the stipulated judgment.
 

 On August 22,1994, wife filed a notice of appeal from the June 22,1994, order denying her motion to set aside the judgment.
 

 Discussion
 

 I.
 
 Statutory Basis for Setting Aside the Stipulated Judgment
 

 The notice of appeal cited the order denying wife’s motion to set aside the stipulated judgment as the basis of the appeal, and that is the central issue we will address. In the trial court wife argued alternative theories under which the judgment should have been set aside, but in this court she argues only that the judgment should have been set aside under Family Code section 2120 et seq.—chapter 10 of the Family Code, entitled “Relief from Judgment.”
 

 The new provisions governing the setting aside of the division of community property in a dissolution judgment were enacted in 1992, prior to enactment of the Family Code, as section 4800.11 of the Civil Code. By its own terms the section was to apply to judgments entered on or after January 1, 1993. (Stats. 1992, ch. 36, § 1.) With the enactment in 1993 of the Family Code, to take effect January 1, 1994, the content of Civil Code section 4800.11 was enacted as sections 2120 through 2127 of the Family Code. For the sake of simplicity, in this opinion we will refer only to the Family Code sections in discussing the statutes.
 

 Family Code section
 
 [4]
 
 2120 sets forth the legislative findings with regard to the “strong policy of ensuring the division of community and quasi-community property in the dissolution of a marriage . . . and of providing for fair and sufficient child and spousal support awards.”
 
 (Id.,
 
 subd. (a).) The section goes on to state that “These policy goals can only be implemented with full disclosure of community, quasi-community, and separate assets, liabilities, income, and expenses, . . . and decisions freely and knowingly made.”
 
 (Id.,
 
 subd. (a).) Section 2120, subdivision (b), acknowledges that “It occasionally happens that the division of property or the award of support, whether made as a result of agreement or trial, is inequitable when made due to the nondisclosure or other misconduct of one of the parties.”
 

 Section 2120 goes on to recognize the need to balance the “policy of assuring finality of judgments” against the “public interest in ensuring
 
 *137
 
 proper division of marital property,” the award of sufficient support, and deterrence of misconduct.
 
 (Id.,
 
 subd. (c).) The section then acknowledges that “The law governing the circumstances under which a judgment can be set aside, after the time for relief under Section 473 of the Code of Civil Procedure has passed, has been the subject of considerable confusion” leading to unpredictable and inconsistent decisions. (§ 2120, subd. (d).) The clear implication is that the chapter is intended to address these problems.
 

 Section 2121 provides that a court may relieve a spouse from a judgment, “based on the grounds, and within the time limits, provided in this chapter,” even beyond the six-month time limitation provided in Code of Civil Procedure section 473. (§2121, subd. (a).) A prerequisite to the grant of relief under the chapter is a finding by the court that “the facts alleged as the grounds for relief materially affected the original outcome” and that the grant of relief would materially benefit the moving party.
 
 (Id.,
 
 subd. (b).)
 

 Section 2122 contains the substance of the chapter—the grounds for setting aside a judgment. That section provides, in summary, that a judgment may be set aside for actual fraud within one year of discovery of the fraud; for perjury, within one year of discovery of the perjury; for duress, within two years of entry of judgment; for mental incapacity, within two years of entry of the judgment; and, finally, “(e) As to stipulated or uncontested judgments or that part of a judgment stipulated to by the parties, mistake, either mutual or unilateral, whether mistake of law or mistake of fact. An action or motion based on mistake shall be brought within one year after the date of entry of judgment.”
 
 [5]
 
 It is this latter provision which we find applicable to the present case.
 

 
 *138
 
 A.
 
 Standard of Review
 

 We recognize that the trial court’s exercise of discretion in refusing to set aside a judgment under section 2122 is subject to reversal on appeal only if we find an abuse of that discretion. We also recognize that this court must not merely substitute its own view as to the proper decision: “[T]he showing on appeal is wholly insufficient if it presents a state of facts . . . which . . . merely affords an opportunity for a difference of opinion. An appellate tribunal is neither authorized nor warranted in substituting its judgment for the judgment of the trial judge.”
 
 (Brown
 
 v.
 
 Newby
 
 (1940) 39 Cal.App.2d 615, 618 [103 P.2d 1018].) The trial court’s exercise of discretion must be guided, however, by fixed legal principles, and must “be exercised in conformity with the spirit of the law and in a manner to subserve and not to impede or defeat the ends of substantial justice.”
 
 (Bailey
 
 v.
 
 Taaffe
 
 (1866) 29 Cal. 422, 424.)
 

 B.
 
 Traditional Grounds for Setting Aside a Judgment
 

 Since this chapter has not previously been the subject of judicial opinions we look not to direct precedent in interpreting the language of the statute but instead to decisions under analogous authority. We begin by looking at other statutes which authorize the setting aside of a judgment.
 

 Code of Civil Procedure section 473, subdivision (b), provides, in relevant part, that “The court may, upon any such terms as may be just, relieve a party . . . from a judgment, dismissal, order, or other proceeding taken against him or her through his or her mistake, inadvertence, surprise or excusable neglect.” In
 
 In re Marriage of Jacobs
 
 (1982) 128 Cal.App.3d 273 [180 Cal.Rptr. 234], the trial court granted the wife’s motion under Code of Civil Procedure section 473 to set aside a stipulated judgment of dissolution under a theory of mistake. The husband in
 
 Jacobs
 
 was an accountant and a partner in an accounting firm. Throughout the marriage “husband used his financial expertise as an accountant to manipulate the parties’ money.” (128 Cal.App.3d at p. 278.) The dissolution judgment referred to $250,000 in “trust” for the benefit of the children
 
 (id.,
 
 at p. 279), but there was no trust instrument, and by the time of the motion to set aside the judgment all but $44,000 of the “ ‘children’s money’ ” had been spent by the husband
 
 (id.,
 
 at p. 285). This court affirmed the trial court’s order setting aside the judgment.
 

 In
 
 Hansen
 
 v.
 
 Hansen
 
 (1961) 190 Cal.App.2d 327 [12 Cal.Rptr. 44], the appellate court affirmed a trial court decision to set aside a judgment
 
 *139
 
 dividing the community property of the parties. The husband had agreed to withdraw his answer to the wife’s petition and to allow the matter to proceed as a default after having been told by his lawyers that “ ‘you won’t get any more if you take it into court, this is what the judge decided, and this is it.’ ”
 
 (Id.,
 
 at p. 329.) In reversing, the appellate court noted that “It is clear in this case that the [husband] entered into the stipulation under a misguided belief which goes to the very heart of the administration of justice. The [husband] was told in effect that the judge had already made up his mind and that the lawsuit was over so far as he was concerned.”
 
 (Id.,
 
 at p. 331.)
 

 In
 
 Gregory
 
 v.
 
 Gregory
 
 (1949) 92 Cal.App.2d 343 [206 P.2d 1122], the appellate court affirmed the setting aside of a divorce judgment under Code of Civil Procedure section 473. The wife, who was not represented by counsel, signed an agreement under which the husband got the house of the parties, the family car, his life insurance policies, and most of the household furnishings. The wife received $1,000, a typewriter, a sewing machine, and all of the linens. The wife waived her rights in her Social Security benefits. (92 Cal.App.2d at p. 347.) The husband’s attorney, who had assured the wife “he would not take part in something which was not fair and just,”
 
 (ibid.)
 
 did not tell the wife that it was her privilege to have independent counsel, and did not tell her that there was going to be a hearing in open court
 
 (id.,
 
 at p. 348).
 

 In affirming the order setting aside the judgment the court noted, “ ‘The rules of practice applicable to divorce actions differ in many respects from those which govern other actions. In an action for divorce, upon very slight showing the court will set aside a default, if application for relief be made in due time. . . . The law is at all times very solicitous to preserve the integrity of the marriage relation. That relation is the basis of the family, the foundation of society. ... An action for divorce concerns not only the parties immediately interested, but also the state. . . . It is the duty of the court, representing the state, in accordance with the letter and policy of the law, to guard strictly against fraud, collusion, or imposition when the husband or wife seeks to dissolve the bonds that bind them together.’ ”
 
 (Gregory
 
 v.
 
 Gregory, supra,
 
 92 Cal.App.2d at p. 345.)
 

 Courts have also been held to have inherent power to set aside a judgment, even after the six-month period of Code of Civil Procedure section 473 has passed, if the parties have been deprived of the opportunity to litigate their claim. Thus, one court has stated the applicable rules as follows: “After six months when relief is no longer available under section 473 of the Code of Civil Procedure for mistake, inadvertence, surprise, or excusable neglect, an otherwise valid judgment may only be set aside for
 
 *140
 
 extrinsic fraud or mistake.
 
 (In re Marriage of Stevenot
 
 (1984) 154 Cal.App.3d 1051, 1068 . . . .) Extrinsic fraud occurs when a party is deprived of his opportunity to present his claim or defense to the court, where he was kept in ignorance or in some other manner fraudulently prevented from fully participating in the proceeding.
 
 (Ibid.)
 
 Examples of extrinsic fraud are: concealment of the existence of a community property asset, failure to give notice of the action to the other party, convincing the other party not to obtain counsel because the matter will not proceed (and it does proceed).
 
 (Id.
 
 at p. 1069.) A party’s representation of the value of an asset, favorable to himself, does not constitute extrinsic fraud.
 
 (Id.
 
 at p. 1070.) Extrinsic mistake involves the excusable neglect of a party.
 
 (Kulchar
 
 v.
 
 Kulchar
 
 (1969) 1 Cal.3d 467, 471 ... .) When this neglect results in an unjust judgment, without a fair adversary hearing, and the basis for equitable relief is present, this is extrinsic mistake.
 
 (Ibid.)
 
 Reliance on an attorney who becomes incapacitated, or incompetence of the party without appointment of a guardian ad litem, are examples of extrinsic mistake.
 
 (Id.
 
 at pp. 469-470.)
 

 “Fraud is intrinsic and not a valid ground for setting aside a judgment when the party has been given notice of the action and has had an opportunity to present his case and to protect himself from any mistake or fraud of his adversary, but has unreasonably neglected to do so.
 
 (In re Marriage of Stevenot, supra,
 
 154 Cal.App.3d at p. 1069.) Such a claim of fraud goes to the merits of the prior proceeding which the moving party should have guarded against at the time. Where the defrauded party failed to take advantage of liberal discovery policies to fully investigate his or her claim, any fraud is intrinsic fraud.
 
 (Ibid.)” (In re Marriage of Melton
 
 (1994) 28 Cal.App.4th 931, 937-938 [33 Cal.Rptr.2d 761].)
 

 Cases in which a court has set aside a judgment beyond the time allowed for doing so under Code of Civil Procedure section 473 include
 
 In re Marriage of Grissom
 
 (1994) 30 Cal.App.4th 40 [35 Cal.Rptr.2d 530] [affirming grant of order setting aside default judgment obtained by the husband following reconciliation of the parties and after the husband had assured the wife he would not proceed with the dissolution]; and
 
 In re Marriage of Brennan
 
 (1981)
 
 124
 
 Cal.App.3d 598 [177 Cal.Rptr. 520] [reversing denial of motion to set aside dissolution judgment in which the wife failed to hire a lawyer following assurances by the husband and his lawyer that they would be “over fair” with her, and testimony by the husband that book value of stock in business was zero; the wife later discovered stock was worth a minimum of $250,000].)
 

 C.
 
 Recent Statutory Changes
 

 The addition of chapter 10 to the Family Code is not the only change that has affected decisions in this area of the law. In 1991, former sections 5103,
 
 *141
 
 5125, and 5125.1 of the Civil Code were amended to alter the duty of care owed between spouses to “the general rules governing fiduciary relationships” in place of the obligation to “act in good faith with respect to the other spouse” as had been required up to that time. (Former Civ. Code, § 5125, subd. (e); Stats. 1991, ch. 1026, § 3; see now Fam. Code, § 1100.) One court discussing these statutory changes has noted the difficulty of attempting to “draw a bright line distinction between the two duties. As many writers have observed, ‘good faith’ is an amorphous phrase, having no definite meaning of its own and usually illustrated in the negative by what it is not.”
 
 (In re Marriage of Reuling
 
 (1994) 23 Cal.App.4th 1428, 1438 [28 Cal.Rptr.2d 726].)
 

 The court went on to observe that “A fiduciary relationship has been defined as ‘any relation existing between parties to a transaction wherein one of the parties is . . . duty bound to act with the utmost good faith for the benefit of the other party. Such a relation ordinarily arises where a confidence is reposed by one person in the integrity of another, and in such a relation the party in whom the confidence is reposed, if he voluntarily accepts or assumes to accept the confidence, can take no advantage from his acts relating to the interest of the other party without the latter’s knowledge or consent.’
 
 (Herbert
 
 v.
 
 Lankershim
 
 (1937) 9 Cal.2d 409, 483 . . . .)”
 
 (In re Marriage of Reuling, supra,
 
 23 Cal.App.4th at p. 1438.) Commenting on the changes to former Civil Code section 5125, that court noted that “Given a stated judicial distinction between the two standards and the subsequent change in the statutory language from ‘good faith’ to ‘fiduciary duty,’ we may reasonably infer that the Legislature intended by the 1991 amendments to replace a lesser standard with one deemed higher.” (23 Cal.App.4th at p. 1439.) The court in
 
 Reuling
 
 did not determine the effect of the statutory changes on the facts before it, however, because the court concluded that the Legislature did not intend to have the amended statute apply to conduct that had occurred before the amendments were enacted.
 
 (Ibid.)
 

 The intent of the Legislature with regard to the duty of disclosure owed between spouses was made more explicit by the enactment in 1992, effective January 1, 1993, of what was then Civil Code section 4800.10, now chapter 9 of the Family Code, sections 2100 through 2113. (Former Civ. Code, § 4800.10, added by Stats. 1992, ch. 37, § 1.)
 

 Civil Code section 4800.10 (now Family Code sections 2100 through 2113) was added to specify that, from the date of separation to the date of distribution of the assets of the community, each party to a marriage dissolution is subject to the general rules governing the actions of persons occupying confidential relations with each other. Before it even took effect,
 
 *142
 
 Civil Code section 4800.10 was amended to expand the activities to which the higher standard should apply; by the time it became effective January 1, 1993, the higher standard of care now found in Family Code section 721 applied to “all activities that affect the property rights of the other party,” (Stats. 1993, ch. 219, § 107) including, but not limited to, the activities enumerated in what is now Family Code section 2102.
 

 Section 721 provides, in relevant part, that “in transactions between themselves, a husband and wife are subject to the general rules governing fiduciary relationships which control the actions of persons occupying confidential relations with each other. This confidential relationship imposes a duty of the highest good faith and fair dealing on each spouse, and neither shall take any unfair advantage of the other.” This is the standard that had been applicable to spouses during a marriage and prior to separation; by the various statutory amendments in 1991 and 1992, this standard had been extended to apply to spouses between the time the parties separate and the time the marital property is divided.
 

 Section 2102, outlining the fiduciary duties owed from one spouse to the other under the amended standard, provides in part that each spouse has a fiduciary obligation as to “The accurate and complete disclosure of all assets and liabilities in which the party has or may have an interest or obligation and all current earnings, accumulations, and expenses,” and also has such an obligation with regard to “The operation or management of a business or an interest in a business in which the community may have an interest.” (§ 2102, subds. (a), (c).)
 

 D.
 
 Application of Present Law
 

 Wife here does not argue that the requirements of Code of Civil Procedure section 473 were met so we will not address the question of whether the judgment could have been set aside under that section. It is under the amended statutes that we must evaluate the present case. At the outset, it is clear that section 2122 now provides that a motion to set aside a stipulated judgment may be brought within one year after the date of entry of judgment, and it is equally clear that wife’s motion was timely under that statute.
 

 Less clear is the meaning and the nature of the “mistake” which permits the setting aside of a judgment. As we have discussed above, there have been several cases which have permitted an applicant to set aside a dissolution judgment for mistakes comparable to the mistake of wife in the present case. (See, e.g.,
 
 In re Marriage of Brennan, supra,
 
 124 Cal.App.3d 598.) Such relief, however, is not automatic. (See, e.g.,
 
 Caldwell
 
 v.
 
 Methodist Hospital
 
 
 *143
 
 (1994) 24 Cal.App.4th 1521 [29 Cal.Rptr.2d 894] [denying relief from court’s dismissal of the case when neither party appeared at a hearing because counsel for both parties were mistaken on the hearing date].)
 

 In the context of the case before us we find that the relationship between the parties and the higher duty of disclosure to which the parties are held under section 2102 regarding the community property of the marriage is relevant to our determination that the mistake in the present case warrants setting aside the judgment.
 

 The facts submitted to this court on appeal compel a finding that husband breached his duty to provide an “accurate and complete disclosure of all assets and liabilities” of the parties at the time of the negotiations surrounding the stipulated judgment. Wife contends that husband failed to disclose the true value of the assets accumulated by the parties during the marriage. Wife has supported her argument by submitting valuations of the property prepared by her experts, and even by husband’s experts, and comparing them to husband’s testimony at trial regarding the value of the community property. Wife has also provided loan applications submitted to banks by husband near to the time of the testimony showing dramatically higher values given to the properties on the loan applications than were testified to by husband at trial.
 

 Husband’s failure to comply with the requirements of section 2102 regarding “accurate and complete” disclosure of assets is further shown by the declaration of wife’s first accountant who stated that she had been unable to obtain information documenting the value of the property of the parties and that she had had to rely on the representations of husband and husband’s attorney in valuing the property. Although wife was not represented by counsel at the time of trial, husband and his attorney had indicated to the court that the stipulated judgment had been approved by wife’s previous attorney and by wife’s previous accountant. In light of the declaration subsequently filed with the court, it appears that any approval by wife’s attorney or accountant was necessarily made in reliance on the representations made to her, which were subsequently shown to be questionable. The court, in turn, recommended to wife that she accept the judgment, but made that recommendation with the caveat “if the figures that were given to me are correct.” The record before us contains nothing but husband’s testimony to support those figures. The evidence that the figures were not correct includes declarations by both of wife’s accountants, loan applications prepared by husband, and appraisals by independent appraisers. Even husband’s own appraiser stated values for the community property that were greater than those he testified to at trial.
 

 
 *144
 
 It appears that wife was a difficult client near the time of the trial, as indicated by the fact that her attorney and her accountant asked to be relieved. The fact remains, however, that wife was not represented at the time of the trial, that she asked the court to continue the matter so that she could get representation, and that the court denied her request. Under the stringent “extrinsic mistake” standard that would have applied in the absence of the recent statutory changes, the facts before us might not have been sufficient to warrant a reversal by this court on abuse of discretion grounds.
 

 Under the newly enacted requirements of full disclosure, however, the analysis is different. Husband’s failure to disclose the values of the assets, or even to give wife’s accountants access to the information from which the value could be derived, would constitute a violation of section 2105, subdivision (b)(2), which states that a final declaration of disclosure must include, among other things, “All material facts and information regarding the valuation of all assets that are contended to be community or in which it is contended the community has an interest.” Section 2105, subdivision (a), provides that “The commission of perjury on the final declaration of disclosure may be grounds for setting aside the judgment, or any part or parts thereof. . . .”
 

 Quite reasonably, the remedy of setting aside a judgment is not offered for failure to disclose the existence or the value of assets; there would presumably be no judgment entered if there was a failure to disclose. The Legislature has provided, however, that the remedy of setting aside a judgment is available for violation of this chapter. Like perjury, the failure to disclose would induce the other spouse to stipulate to a judgment on the basis of incomplete or inaccurate information. We conclude that the failure of a spouse to disclose the existence or the value of a community asset, as occurred in the present case, constitutes a basis for setting aside a judgment on the grounds of mistake under section 2122.
 
 [6]
 
 We therefore reverse the judgment.
 

 II.
 
 Husband’s Separate Property Contention
 

 Husband argued extensively below, and maintains in this court, that the value of property awarded to him in the stipulated judgment is largely irrelevant because the property was not community property but was in reality his separate property which he had acquired prior to the marriage. He argues that the substantial assets acquired by the time of the dissolution of
 
 *145
 
 the marriage reflected primarily the enhanced value attributable to the business he owned before the marriage, and that any increase in value arising from his community property skill or effort had already been given to the community during the course of the marriage, as shown by the comfortable life of the parties during the marriage and the substantial community property awarded to wife.
 

 Again, the record before us cannot be construed to support this contention. The only indication in the record of the business assets owned by husband at the time of the marriage in 1977 is the judgment of dissolution of his prior marriage in 1976 in which husband was awarded his home and furnishings, a 1965 Chevrolet pickup truck, a 1970 Yamaha motorcycle, and a 1962 Wabco earth mover. His former wife was awarded $2,000 in cash “as and for her share of the community property” and a 1967 Plymouth automobile. The only asset directly related to his business is the earth mover, and it strains credulity to argue that the substantial business that existed at the time of the property division in the present marriage reflects only the enhanced value attributable to that earth mover. There may be facts which do not appear before this court, but on the record before us we do not find that the stipulated judgment can be sustained under this theory.
 

 III.
 
 Change of Circumstances
 

 Finally, we note that the minute orders included in the record on appeal related to child and spousal support only support our conclusion that the stipulated judgment warrants another look by the trial court. Although we are mindful of the admonition in section 2123 that “a judgment may not be set aside simply because the court finds that it was inequitable when made,” we are also aware that a motion to set aside is addressed to the equitable powers of the court.
 

 The stipulated judgment provided that in addition to her share of the community property, consisting primarily of the residence, wife was to receive monthly family support of $6,000. There was nothing in the judgment limiting the conditions under which the support provisions could be modified, and there was not even a minimum term specified for which wife was to receive the stipulated amount of support. Indeed, the support provisions were modified 16 months after the judgment was entered, and the support was reduced to less than $2,000 per month. Wife was 15 years old when the relationship started, and married at 17. At the time of the dissolution she had no work experience and no marketable skills. She had five children to care for, most of whom were still minors. All agree that she is not a sophisticated business person. It is hard to imagine that any lawyer
 
 *146
 
 representing wife in negotiating the stipulated judgment would not have provided a guarantee of substantial support for more than 16 months. Although these provisions have now been modified, and no appeal was filed from the modification orders, we would direct that reconsideration by the trial court of the division of community property would constitute a change of circumstances sufficient to warrant a review of the existing support award in conjunction with the property review.
 

 Disposition
 

 The judgment is reversed. Costs on appeal to be borne by husband.
 

 Richli, J., and McDaniel, J.,
 
 *
 
 concurred.
 

 [1]
 

 The accountant stated specifically that in valuing the property she had relied on the values submitted to wife by husband and his attorney. An examination of the values listed by that accountant reveals that the values given to the accountant at that time were substantially higher than the values to which husband testified at trial. Thus, for example, husband had told the accountant that the Laughlin condominium had a value of $140,000; that the Bullhead condominium had an equity value of $65,000; that the Big Bear cabin had an equity value of $155,000; and that the Brown Street property (the business property of Varner Construction, Inc.) had an equity value of $400,000.
 

 At trial husband testified that the Laughlin condominium had a value of $90,000, but with the tax liability the net value to him would be $60,000 less the cost of sale; husband testified that the value of the Bullhead condominium was about $110,000, with a debt of $65,000, for an equity value of $45,000, and he stated that the parties had no tax basis in that property so it, too, was subject to substantial tax liability; husband testified that the realistic sales price for the Big Bear house was about $300,000, that $240,000 was owed against it, and that there would be about $80,000 in tax liability if it were sold, plus the costs of the sale, and that it was really a $45,000 liability rather than an asset. Husband testified at trial that the value of the Brown Street property was about $200,000.
 

 [2]
 

 The record on appeal does not include a transcript of the hearing.
 

 [3]
 

 Family Code section 2127 provides that “As to actions or motions filed under this chapter, if a timely request is made, the court shall render a statement of decision where the court has resolved controverted factual evidence.”
 

 [4]
 

 Further section references will be to the Family Code, unless otherwise specified.
 

 [5]
 

 The complete text of section 2122 reads as follows: “The grounds and time limits for a motion to set aside a judgment, or any part or parts thereof, are governed by this section and shall be one of the following:
 

 “(a) Actual fraud where the defrauded party was kept in ignorance or in some other manner, other than his or her own lack of care or attention, was fraudulently prevented from fully participating in the proceeding. An action or motion based on fraud shall be brought within one year after the date on which the complaining party either did discover, or should have discovered, the fraud.
 

 “(b) Perjury. An action or motion based on perjury in the preliminary or final declaration of disclosure or in the current income and expense statement shall be brought within one year after the date on which the complaining party either did discover, or should have discovered, the perjury.
 

 “(c) Duress. An action or motion based upon duress shall be brought within two years after the date of entry of judgment.
 

 “(d) Mental incapacity. An action or motion based on mental incapacity shall be brought within two years after the date of entry of judgment.
 

 “(e) As to stipulated or uncontested judgments or that part of a judgment stipulated to by the parties, mistake, either mutual or unilateral, whether mistake of law or mistake of fact. An
 
 *138
 
 action or motion based on mistake shall be brought within one year after the date of entry of judgment.”
 

 [6]
 

 We need not decide here whether section 2122 intends to incorporate the definitions of “mistake of law” and “mistake of fact” provided in Civil Code sections 1577 and 1578 as applicable to the interpretation of contracts.
 

 *
 

 Retired Associate Justice of the Court of Appeal, Fourth District, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.